# FOR PUBLICATION



FILED
Jul 22 2013, 6:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD J. TRIBBETT**
Tribbett Law Office
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TWIN LAKES REGIONAL SEWER DISTRICT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 91A04-1212-PL-638 |
| | ) | |
| ROBERT W. TEUMER and PAULA K. TEUMER, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE WHITE CIRCUIT COURT
The Honorable Robert W. Thacker, Judge
Cause No. 91C01-1101-PL-5

**July 22, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Twin Lakes Regional Sewer District appeals the trial court's judgment regarding appropriation of easements on the property of Robert W. Teumer and Paula K. Teumer. Twin Lakes presents three condensed and restated issues on appeal: 1) whether the trial court improperly admitted the report of the court-appointed appraisers; 2) whether there was sufficient evidence to support the trial court's damage award; and 3) whether the trial court properly directed the clerk to refund Twin Lakes's overpayment of damages. Concluding that the court-appointed appraisal was improperly admitted and that there was insufficient evidence to support the trial court's damage award, and that the trial court correctly directed the clerk to refund Twin Lakes's overpayment, we reverse and remand.

## Facts and Procedural History

In January 2011, Twin Lakes filed a Complaint for Appropriation of Easement, seeking to appropriate two permanent sewer easements and two temporary construction easements—one each on two plots of land owned by the Teumers. In March 2011, following a hearing at which the Teumers appeared pro se, the court issued an interlocutory judgment of condemnation, determining that the Teumers owned the property over which Twin Lakes sought the easements, that the easements were required for Twin Lakes's sewer project, and that the Teumers waived any objection to the acquisition but were entitled to fair compensation. The court also appointed three appraisers to assess the damages to which the Teumers were entitled.

In May 2011, the court-appointed appraisers filed a report concluding that just compensation for the taking amounted to $5,434. On June 3, 2011, Twin Lakes paid $5,434 to the clerk of the White Circuit Court, and as a result the court ordered that Twin Lakes was entitled to take immediate possession of the easements. That same day, Twin Lakes filed exceptions to the appraisers' report. Three days later, the court clerk erroneously sent $5,434 to the Teumers.

In August 2012, a bench trial was held on the issue of the Teumers' damages, at which the Teumers appeared pro se. Twin Lakes called two witnesses, the Twin Lakes superintendent, and a licensed appraiser. The appraiser valued the combined easements at a total of $950. The Teumers introduced no evidence. The court, on its own motion, admitted into evidence the report of the court-appointed appraisers, noting in the chronological case summary entry that the court took judicial notice of the report.

In October 2012, the court entered final judgment and order and determined that the Teumers' damages were $5,000. In November 2012, Twin Lakes filed a motion to correct error. The court ordered the court clerk to refund to Twin Lakes $434 from overpayment to the Teumers but otherwise denied the motion to correct error. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I.  Standard of Review

Where, as here, the appellee has failed to submit a reply brief, we need not develop an argument on the appellee's behalf. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068

3

(Ind. 2006). Instead, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. Id. Prima facie error in this context means "at first sight, on first appearance, or on the face of it." Id. (citation omitted). We will affirm if the appellant is unable to meet this burden. Id.

## II. Eminent Domain Appraisals

As background, we provide a brief overview of appraisals in an eminent domain case. Indiana Code section 32-24-1-5 requires that a condemnor first make an offer to purchase the easement or other interest in question. If the condemnor and condemnee cannot agree on a price, then the condemnor may file suit to have the damages determined. Ind. Code § 32-24-1-4. In that case, once the court is satisfied that the condemnor has the right to exercise the power of eminent domain, the court must appoint three appraisers to assess the damages that the property owners may sustain as a result of the taking. Ind. Code § 32-24-1-7(c). Once the court-appointed appraisers have assessed the damages, if the condemnor pays that amount to the court clerk, the condemnor may take possession of the interest in the property, although the amount of damages is subject to review if the appraisal is challenged. Ind. Code § 32-24-1-10. If neither party challenges the court-appointed appraisal within the statutory time limit, then that award becomes final and there is no issue for trial. State v. Berger, 534 N.E.2d 268, 269 (Ind. Ct. App. 1989), trans. denied. However, either party may file an exception, challenging the award determined by the court-appointed appraisers. Ind. Code § 32-24-1-11(b). If an exception is filed, the case proceeds to trial for a determination of the damages.

As for any money that the condemnor deposited with the court clerk following the initial court-appointed appraisal, the condemnee may file a written request for payment of the damages forty-five days after the court clerk has mailed a copy of the appraisers' report. Ind. Code § 32-24-1-11(d). When such a request is filed, the clerk must notify the condemnor, and the condemnor must be provided an opportunity to show cause why the requested amount should not be paid to the condemnee. Ind. Code § 32-24-1-11(d)(2). After a hearing, the court determines and orders any payment to the condemnee. Ind. Code § 32-24-1-11(d)(3). If an exception has been filed to the court-appointed appraisal, the court clerk may not make payment to the condemnee until the condemnee has filed a written undertaking with an approved surety for repayment to the condemnor of any excess payment once the final damages have been determined at trial. Ind. Code § 32-24-1-11(d)(4).

### III. Admission of the Report of the Court-Appointed Appraisers

#### A. Pro Se Parties

Twin Lakes first complains that the court was improperly influenced by the Teumers because they appeared pro se. It is well settled that pro se litigants are to be held to the same standard as licensed lawyers. Goossens v. Goossens, 829 N.E.2d 36, 43 (Ind. Ct. App. 2005). The record indicates that the court admitted the report of the court-appointed appraisers, without a motion by either party, because the court was giving extra latitude to the Teumers. At the trial, Twin Lakes objected to the court's admission of the report, because it had not been offered and there had been no testimony from the appraisers. The court stated that, "I understand that you want to say that nobody offered this or nobody came and testified, I —

5

I'm not going to hold that against a pro se, uh, defendant whose property has been uh, condemned. . ." Transcript at 59. While we understand the difficulties faced by a defendant when proceeding pro se, and appreciate that judges sometimes exercise additional patience with pro se parties, the law is clear that they are to be held to the same legal standards as licensed attorneys. The court may not admit evidence on its own motion where it would not otherwise be able to do so, in order to not "hold it against" a pro se party.

### B. Judicial Notice

Twin Lakes argues that judicial notice was an improper means for admission of the court-appointed appraisers' report. While it appears that the court had an improper motive for admitting the report, as discussed above, we analyze here whether judicial notice was nonetheless an appropriate avenue for admission of the report. We conclude that it was not.

Judicial notice excuses the party having the burden of proving a fact from producing formal proof to establish that fact. Hutchinson v. State, 477 N.E.2d 850, 854 (Ind. 1985). Indiana Evidence Rule 201 allows a court to take judicial notice of both certain kinds of facts and certain kinds of laws. "A judicially-noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(a). Types of law of which a court may take judicial notice include

> (1) the decisional, constitutional, and public statutory law, (2) rules of court,
> (3) published regulations of governmental agencies, (4) codified ordinances of
> municipalities, (5) records of a court of this state, and (6) laws of other

6

governmental subdivisions of the United States or of any state, territory or other jurisdiction of the United States.

Evid.R. 201(b). The court here did not mention judicial notice at the trial when admitting the appraisers' report, and the chronological case summary entry does not note under which subsection of Evidence Rule 201 the court admitted the report.

Twin Lakes suggests, and we agree, that there is no question that the report was inadmissible as a kind of fact in this case, because the amount of damages was not only "subject to reasonable dispute," but was in fact the entire dispute underlying the case. Of the possible kinds of law of which a court may take judicial notice, only "records of a court of this state" appears to potentially fit the court-appointed appraisal. However, while a party's pleading may be judicially noticed, the facts in those pleadings are not necessarily subject to judicial notice. See, e.g., Lutz v. Erie Ins. Exch., 848 N.E.2d 675, 678 (Ind. 2006) ("It is well settled in Indiana that a trial court may judicially notice a party's pleadings, whether or not facts recited in those pleadings are susceptible of judicial notice."); Brown v. Jones, 804 N.E.2d 1197, 1202 (Ind. Ct. App. 2004) ("[F]acts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice."), trans. denied. Here, we leave for another day whether it would have been appropriate to judicially notice the appraisers' report, which was not a party pleading but was within the record of the court. What seems clear is that facts within the report, namely the damages calculated by the appraisers, were not suitable for judicial notice. The court-appointed appraisers' report was thus improperly judicially noticed and admitted for consideration.

IV. Evidence Supporting Damage Award

7

Twin Lakes next argues that there was insufficient evidence supporting the court's damage award of $5,000 to the Teumers. We agree. In eminent domain proceedings where the damages are at issue, the burden of showing the damages is on the condemnee. Gradison v. State, 260 Ind. 688, 300 N.E.2d 67, 75 (1973). We note that the Teumers called no witnesses and introduced no evidence at trial.

As we analyzed above, the appraisal report was improperly judicially noticed. In addition, there are several other problems with the appraisers' report, even if it had been offered for admission. The first is that the report purports to be a fee simple appraisal. The trial court noted that the report

> makes it look like there's a fee simple take and not an easement take. Uh, but there are references that kind of indicate that they are aware of the temporary construction nature part of the take, and that they're aware of the easement nature of the permanent part of the take. There's some form usage here that is in poor form, and uh, there's quite a disparity in the evidence.

Tr. at 59-60. The summary of the report, provided along with the report, states that the property rights appraised were a "fee simple estate." Appendix at 32. References to fee simple are scattered throughout the report. While the report also mentions easements and partial takings, to the extent that we can make out what the appraisers actually calculated, it appears that the appraisers determined both the fee simple values as well as some easement values and combined them to reach a total takings value of $5,434. This may partially explain why the court-appointed appraisers' report valued the damages at $5,434 whereas the appraiser that Twin Lakes called at trial valued the damages at $950. To the extent that the

8

court-appointed appraisal was for a fee simple estate value, it was irrelevant to the court's determination of the value of the easements that Twin Lakes required.

Secondly, case law indicates that even if the report had been offered into evidence by the Teumers—and assuming that the valuation was relevant—it nonetheless would not have been admissible. See AGT, Inc. v. City of Lafayette, 802 N.E.2d 1, 4-5 (Ind. Ct. App. 2003) ("It has long been established in Indiana that the amount of the appraisers' award paid into court by the condemnor and upon which award the landowner based his exceptions is not admissible in evidence upon the trial of these exceptions, and it is reversible error to admit it into evidence. . . . While the amount of the appraisers' award is not admissible, a court-appointed appraiser may testify at trial without reference to the report or his or her previous appointment in the case." (quotations and citation omitted)), trans. denied.

Because the report of the court-appointed appraisers was inadmissible, there was insufficient evidence supporting the court's award of $5,000 to the Teumers for the easements on their property. The only other evidence presented regarding damages was the testimony of Twin Lakes's witness Lawrence Culp, an appraiser, who valued the damages at $950 and whose testimony was uncontroverted. We therefore remand to the trial court to enter judgment in favor of the Teumers in the amount of $950.[1]

Additionally, there appears to be a misunderstanding of the basic nature of an easement, which we would like to clarify here. At trial, the court spent some time expounding on the nature of an easement and what Twin Lakes could do on the property with

---

[1] Twin Lakes has already remitted more than $950, and will be owed a refund for the excess

the easement, including mining for minerals. Twin Lakes objected that they were not claiming mineral rights, and the court stated that "if you don't exclude it, it can possibly be included." Tr. at 47. In fact, however, easements are limited to the purpose for which they are created. Whitt v. Ferris, 596 N.E.2d 230, 233 (Ind. Ct. App. 1992). The extent of an easement is determined by the purpose served by the easement. Howard v. United States, 964 N.E.2d 779, 781 (Ind. 2012). In its Complaint for Appropriation of Easement, Twin Lakes stated that the easement rights were necessary so that main sewer lines could be "erected, constructed, installed, laid, used, operated, inspected, repaired, maintained, and replaced for the collection and transporting of wastewater to a wastewater treatment site" and that the sewer line would be approximately fifty-four inches under the surface of the land and the Teumers would be "entitled to the continued use of the easement area in a manner not inconsistent with the easement." App. at 12. The temporary easements were to aid in the construction of the project, and would terminate with all property rights reverting to the Teumers one year after the completion of construction. Twin Lakes's easement would thus be limited to installation, maintenance, etc., of the sewer line, and would not, for example, include the right to mine the property for minerals.

## V. Non-Party Liability

Finally, Twin Lakes argues that the court should not have ordered the court clerk, a non-party, to return to Twin Lakes any overpayment based on their deposit to the clerk of $5,434, but instead should have ordered the Teumers—who were erroneously sent a check by

payment, as discussed below.

10

the clerk—to return the overpayment. We note that Twin Lakes's argument here is limited and not supported by cogent argument or references, and thus is waived. See State v. Holtsclaw, 977 N.E.2d 348, 350 (Ind. 2012). In fact, Twin Lakes states that "[a]ny effort to collect from the clerk the excess payment could implicate issues [Twin Lakes] has not chosen to raise." Br. of Appellant at 19. We will nonetheless address the issue briefly.

We believe that the court was correct to order the clerk to return any overpayment. As discussed above, there are multiple statutory requirements revolving around any payment of damages to the condemnees. There are waiting periods and also requirements for the condemnees to provide an undertaking with a surety. The clerk here failed to follow any of these procedures, and sent a check to the Teumers for Twin Lakes's entire $5,434 deposit only three days after the deposit had been made. Because none of the statutory procedures were followed, the money should still be in the hands of the clerk, and the clerk was properly ordered to refund money to Twin Lakes. The court advised the Teumers that they did not have to return any money. While we agree that the clerk is required to refund money to Twin Lakes, the clerk can nonetheless attempt to recover from the Teumers the overpayment portion of the erroneous payment.[2]

## Conclusion

Twin Lakes has presented a case of prima facie error. Concluding that the court-appointed appraisers' report was improperly admitted, and that without the report there is

---

[2] Twin Lakes originally remitted $5,434 to the court clerk. Based on our conclusion above that the damages are only $950, that results in a $4,484 overpayment, which the court clerk will need to refund

insufficient evidence supporting the court's damage award, we reverse and remand with instructions for the trial court to enter judgment in the amount of $950 in favor of the Teumers.

Reversed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.

---

to Twin Lakes and may then attempt to recover from the Teumers.