

**FILED**

Oct 13 2017, 11:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cody Cogswell
Cogswell & Associates
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
M.H.

David W. Stone IV
Stone Law Office & Legal
Research
Anderson, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of: S.A.M. (Child), | October 13, 2017 |
| M.M., | Court of Appeals Case No. 48A05-1704-JP-922 |
| *Appellant-Intervenor,* | Appeal from the Madison Circuit Court |
| v. | The Honorable Angela Warner Sims, Judge |
| M.H., | Trial Court Cause No. 48C01-1307-JP-184 |
| *Appellee-Petitioner,* | |
| S.B., | |
| *Respondent* | |

**May, Judge.**

[1]     When S.A.M. was born, M.M. ("Father") signed a paternity affidavit and became S.A.M.'s legal father.  Over time, suspicion arose that another man,

B.H., was S.A.M.'s biological father. However, B.H. died before paternity tests were conducted. Thereafter, B.H.'s father, M.H., filed a paternity action to determine whether S.A.M. was the biological child of B.H. During that proceeding, Father entered into a mediation agreement ("Mediation Agreement") with M.H. Father later asked the trial court to declare that Agreement void *ab initio*, but the trial court denied his motion.

[2] Father now appeals that denial, raising the following restated issues:

> (1) Whether the trial court erred when it concluded M.H. had standing as S.A.M.'s next friend to file a petition to establish B.H.'s paternity of S.A.M.;

> (2) Whether the trial court abused its discretion in denying Father's request to declare void the Mediation Agreement;

> (3) Whether the trial court abused its discretion in denying Father's request for attorney fees.

We reverse and remand.

# Facts and Procedural History

[3] S.A.M. was born out of wedlock to S.B. ("Mother") on May 8, 2007. When Mother became pregnant, she was in a relationship with both Father and B.H. On the day S.A.M. was born, Father executed a paternity affidavit acknowledging he was S.A.M.'s biological father. Father is also listed as S.A.M.'s father on S.A.M.'s birth certificate. Since S.A.M.'s birth, Father has

shared custody of S.A.M. with Mother and has held himself out as S.A.M.'s father. S.A.M. refers to Father as "Dad." (Appellant's App. Vol. II at 106.)

[4] The record indicates Father and B.H. had known each other and were "best friends" since they were roughly nine years old. (*Id.* at 105). However, the record is sparse with facts regarding whether B.H. had any involvement in S.A.M.'s life. On January 19, 2011, B.H. passed away. At the time of B.H.'s passing, paternity had not been established for B.H. through DNA testing or otherwise. Nevertheless, at some point, it came to be believed by the parties that B.H. was S.A.M.'s biological father.

[5] On July 29, 2013, M.H. filed a petition as S.A.M.'s next friend to establish paternity of S.A.M. In the petition, M.H. alleged his deceased son, B.H., was the biological father of S.A.M. Mother was served with a copy of the petition, but Father was not. On August 28, 2013, M.H. filed a "Request for Custody or in the Alternative Request for Grandparent Visitation" of S.A.M. (*Id.* at 18.)

[6] Father intervened in the action and upon his request, the court appointed him a public defender. On October 30, 2013, Father filed an Amended Motion to Dismiss, claiming M.H. was not a person who may file a paternity action under Indiana Code section 31-14-4-1. The court denied this motion.

[7] On January 29, 2014, M.H. filed a motion for mediation. On February 6, 2014, the court ordered the parties to agree on a mediator and conduct mediation. The parties conducted mediation on March 19, 2014. Father and M.H. entered into the Mediation Agreement stipulating, among other things: (1) B.H. was the

biological father of S.A.M.;[1] (2) Father and Mother had been "actively involved in the care and raising of [S.A.M.]" since S.A.M.'s birth and Father had been the "de facto custodian," (*id.* at 20), of S.A.M. since S.A.M.'s birth; (3) Father and Mother shall have joint legal custody of S.A.M.; (3) Father shall have primary physical custody of S.A.M.; (4) neither Mother nor Father would have child support obligations to one another; (5) M.H. is the biological paternal grandfather of S.A.M.; and (6) M.H. and his wife, C.H., shall have "Grandparent visitation" with S.A.M. on certain dates set out in the agreement. (*Id.* at 21-23.) The parties also agreed to a "mutual restraining order," (*id.* at 23), requiring, among other things:

> [M.H.] shall not disclose, discuss, or communicate in any manner with [S.A.M.] the biological relationships of the parties and/or the identity of the biological FATHER without the expressed written authorization of [Mother] and [Father]. [M.H.] shall take all steps necessary to ensure that third parties including [C.H.] adhere to and honor this provision.

(*Id.* at 23-24) (emphasis in original). The trial court entered an order approving the Mediation Agreement that same day.

[8] The arrangement between Father and M.H. fell apart. Father learned M.H. told S.A.M., during a visit with him, that B.H. was his biological father. As a

---

[1] While M.H. alleges third-party "DNA testing" of S.A.M. was conducted, establishing paternity in B.H., (Appellee's Br. at 11), we note the record contains no direct evidence of any such DNA test conclusively establishing paternity in B.H. There is merely a reference to this alleged DNA test in the GAL's report.

result, Father stopped honoring the Mediation Agreement's provisions regarding visitation. M.H. also claimed Father was alienating S.A.M. from M.H. and C.H.

[9] On August 15, 2014, M.H. filed an "Affidavit for Citation and Motion to Enforce Grandparent Visitation." (*Id.* at 7.) On August 29, 2014, the court held a hearing on M.H.'s motion and affidavit. Noting Father had been denying M.H. visitation pursuant to the Mediation Agreement, the court set out specific dates over the course of the next year for M.H. to have visitation with S.A.M. Furthermore, the court noted if Father denied M.H. visitation with S.A.M., "any and all law Enforcement Authorities shall be granted authority to assist" in enforcing visitation. (Appellee's App. Vol. II at 21.)

[10] On July 15, 2016, M.H. filed a second Affidavit for Citation and Motion to Enforce Grandparent Visitation, alleging "[Father] and [Mother] had "holy [sic] failed and refused to allow [M.H.] to exercise Grandparent Visitation with [S.A.M.]" per the Mediation Agreement. (Appellant's App. Vol. II at 28.) M.H. requested a hearing and contemporaneously filed a "Request for Custody" of S.A.M. (*Id.* at 26.) M.H. also requested the court appoint a Guardian Ad Litem ("GAL") for S.A.M. On July 26, 2016, the court appointed a GAL.

[11] On July 29, 2016, attorney Cody Cogswell entered his appearance in this cause on behalf of Father. That same day, Father filed a "Verified Petition to Terminate Grandparent Visitation," (*id.* at 32), alleging he was "not effectively

represented at the time of the mediation or else he would have been advised to not enter said 'Mediated Agreement.'" (*Id.*)  Additionally, Father alleged M.H. lacked standing under the Grandparent Visitation Statute to bring petition for visitation.  On September 30, 2016, the court held a hearing.  The court noted it would take Father's petition under advisement, ordered the parties to submit briefing on the issue, and ordered the GAL to complete her report and recommendations.

[12]  A series of briefings, hearings, and continuances ensued between October 2016 and February 2017.  On February 20, 2017, Father and Mother jointly filed an "Agreed Entry Establishing Paternity" in Father,[2] (*id.* at 63), and Mother filed an "Affidavit of [S.B.]" attesting Father "ha[d] been a wonderful Father to [S.A.M.][,] and "it was [her] opinion that [M.H.] and [C.H.] ha[d] detrimentally injured [S.A.M.] mentally and emotionally by stating that [S.A.M.]'s Father was dead and that [Father] was not his Father." (*Id.* at 66-67.)  On March 23, 2017, Father filed a "Petition to Dismiss Grandparent Visitation, to Establish Paternity, Motion for Order on the Pleadings, and Motion for Attorney Fees." (*Id.* at 85.)  Attached to the petition was a copy of the paternity affidavit signed by Mother and Father the day S.A.M. was born at Community Hospital in Anderson, Indiana.

---

[2] As we will discuss in further detail below, paternity of S.A.M. Father's paternity had already been established as a matter of law.

[13] On March 29, 2017, the GAL filed her report. The GAL noted it was "a very difficult case" for her. (*Id.* at 113.) The GAL made the following recommendations:

1) It is my recommendation that custody be continued with [Father]. If this Court should decide to modify custody to [M.H.] and [C.H.] then visitation should be put in place between [S.A.M.] and [Father]. It will also be important to allow [S.A.M.] to visit with his sibling, [M.X.M.]

2) [M.H.] should be entitled to visitation and make up time should be afforded to him.

3) Mother should be ordered to have visitation as well.

4) That [S.A.M.] undergo a full mental health evaluation, and that [Father] follow all recommendations. [Father] provide [sic] this Court a copy of the mental health evaluation within 60 days of the date of the order.

5) The family engage in family counseling.

6) Through the help of a therapist, [S.A.M.] should be informed about his biological father.

7) [Father] immediately apply for social security benefits for [S.A.M.] and provide proof to the Court within 60 days from the date of the order. If [Father] does not wish to use the social security monies he should set up a savings account in [S.A.M.]'s name.

8) All parties refrain from making negative comments about each other in the presence of the child and speaking about any court matters.

9) [Father] be supportive before the visits with the grandparent, [M.H.].

(*Id.* at 115.)

[14] The court held a hearing on April 7, 2017. Father, Mother, and M.H. were present at the hearing. Father again raised the issue of M.H.'s standing, argued the Mediation Agreement was void, and requested the court set aside that Agreement. Father also submitted an affidavit for attorney fees. M.H. argued both Father and Mother continued to violate the Mediation Agreement by preventing M.H. from visiting with S.A.M. by "hiding" or not being home at the designated times M.H. was supposed to pick up S.A.M. (Tr. at 17.) Mother also spoke at the hearing and expressed her disapproval of S.A.M. spending time with M.H. and C.H.

[15] The court denied Father's motion to set aside the Mediation Agreement and found M.H. had standing. The court stated:

> [The] Court's ultimate though [sic] ruling here today is that paternity has been established with respect to [S.A.M.]. And that has been established by the order of the Court and that is the mediated agreement that was signed by the parties on March the 19th, 2014 and the way the Court has undertaken this analysis is[,] um assuming this paternity affidavit is valid for purposes of the Court's analysis[,] this document that doesn't appear anywhere, in any Court documents that have been held here in

Madison County concerning orders that have been issued over the course of many years concerning S.A.M. Nowhere has [Father] asserted . . . um requested to establish paternity over this child by a petition filed with this Court until just recently. That was filed under the 184 case. The Court again looking at the record only finds one (1) order that exists with respect to the paternity of the child and that paternity was agreed to by all parties involved including [Father] and again that is the mediated agreement in paragraph one (1) that the parties stipulate that [B.H.] is the biological father of [S.A.M.] hereinafter [S.A.M.'s] date of birth 5/8/2007. So the Court is of the opinion that that is the order of the Court.

* * * * *

And at this point that is the only order of the Court that the Court finds that does establish paternity of this child and as a result of that the Court also finds that the mediated agreement is not to be set aside, that [M.H.] . .[sic] the Court also finds does have standing to be involved in this case. He was allowed to intervene in the paternity case that existed over there in the 253 case[3] um the Court finds that his standing isn't necessarily via the Grandparent Visitation statute. . . . But the Court does find given the history of the case that [M.H.] does and has had a relationship with the child and would be permitted under a third party status to maintain custody rights or pursue custody or potential custody rights of this child[.]

---

[3] We take judicial notice under Indiana Rule of Evidence 201(2)(c) that in 2005, Mother filed a petition in Cause Number 48C01-0507-JP-253 to establish Father's paternity of M.X.M., Mother's other child.

(Tr. at 9-11.) The court ordered the parties to abide by the Mediation Agreement, specifically emphasized the parties must follow the visitation orders, and denied Father's motion for attorney fees.

## Discussion and Decision

[16] We first note Father's claim the trial court failed to issue findings of fact and conclusions of law in its order.[4] Despite our preference for written findings of fact and conclusions of law, "a trial court's failure to issue findings and conclusions in written form, in and of itself, does not constitute reversible error." *Nunn Law Office v. Rosenthal,* 905 N.E.2d 513, 517 (Ind. Ct. App. 2009). The plain language of Indiana Trial Rule 52(A) does not require that the findings and conclusions be in writing. *Id.* The purpose of Rule 52(A) is "to provide the parties and the reviewing court with the theory upon which the trial judge decided the case in order that the right of review for error may be effectively preserved." *Carmichael v. Siegel,* 670 N.E.2d 890, 891 (Ind. 1996). Oral findings and conclusions can achieve this purpose so long as they are thoroughly detailed in the record. *Rosenthal*, 905 N.E.2d at 517.

---

[4] M.H. argues the trial court's April 7, 2017, order denying Father's request to void the Mediation Agreement is not a final order. Because the court's order is enforcing the parties' agreement as to custody, support, and parenting time, it constitutes a final order. *See In re Paternity of M.R.A.*, 41 N.E.3d 287, 294 (Ind. Ct. App. 2015) (finding, after paternity had been established, trial court's order approving agreement between mother and father regarding custody, parenting time, and child support for children constituted a final order).

[17] Here, although the trial court did not make written findings of fact or conclusions of law, the trial court's oral findings at the April 7, 2017, hearing are detailed in the record and provide us the theory upon which the trial judge decided the case. "In reviewing findings made pursuant to Rule 52(A), we first determine whether the evidence supports the findings and then whether the findings support [the] judgment." *In re Paternity of M.R.A.*, 41 N.E.3d 287, 292 (Ind. Ct. App. 2015). We shall not set aside the findings or judgment unless clearly erroneous. T.R. 52(A). "A judgment is clearly erroneous when there is no evidence supporting the findings, when the findings fail to support the judgment, or when the trial court applies the wrong legal standard to properly found facts." *M.R.A.*, 41 N.E.3d at 293. "Although we give considerable deference to trial courts in family law matters, 'to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible and the trial court has no discretion to reach the wrong result.'" *Id.* (citing *MacLafferty v. MacLafferty,* 829 N.E.2d 938, 941 (Ind. 2009)).

[18] Father argues M.H. lacked standing to have ever brought a paternity action as S.A.M.'s next friend, and thus the Mediation Agreement was void *ab initio.* Additionally, he argues the trial court abused its discretion in declining to award him attorney fees.

### 1) Standing to File Paternity Action

[19] Whether a party has standing is a question of law, which we review *de novo*. *J.R.W. ex rel. Jemerson v. Watterson,* 877 N.E.2d 487, 490 (Ind. Ct. App. 2007). We owe no deference to the trial court's decision. *Id.*

[20] Under the Indiana Code, the following persons are permitted to bring a paternity action:

> (1) The mother or expectant mother.
>
> (2) A man alleging that:
>
>> (A) he is the child's biological father; or
>>
>> (B) he is the expectant father of an unborn child.
>
> (3) The mother and a man alleging that he is her child's biological father, filing jointly.
>
> (4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.
>
> (5) A child.
>
> (6) The department or a county office of family and children under section 3 of this chapter.
>
> (7) The prosecuting attorney under section 2 of this chapter.

Ind. Code § 31-14-4-1 (2006).

[21] Regarding petitions by minors, the Indiana Code provides:

A person less than eighteen (18) years of age may file a petition if the person is competent except for the person's age. A person who is otherwise incompetent may file a petition through the person's guardian, guardian ad litem, or next friend.

Ind. Code § 31-14-5-2 (1997). "There is no statutory definition of 'next friend.'" *R.J.S. v. Stockton*, 886 N.E.2d 611, 614 (Ind. App. Ct. 2008).

[22] Here, as S.A.M.'s alleged paternal grandfather, M.H., does not fall under any of the express categories of who may a petition to establish paternity under Indiana Code section 31-14-4-1. Thus, M.H. sought to have standing to file the paternity action as S.A.M.'s next friend.[5]

[23] We addressed the issue of standing to bring a paternity action as the next friend of a child in *Jemerson*. 877 N.E.2d at 490. The critical facts in *Jemerson* were:

[T]he sister of a child's deceased mother filed a petition to establish paternity of the child. The sister had been the child's guardian, but this court had ordered that the guardianship be dissolved. Thereafter, the child was placed in the legal custody of the mother's former husband, who was not the child's biological father but who had executed a paternity affidavit for the child. Additionally, the biological father had been identified through genetic testing. After receiving the results of this test, the sister, acting as the child's next friend, filed a petition to establish paternity of the child in the biological father. The ex-husband

---

[5] A child may file a paternity action at any time before the child reaches twenty years of age. Ind. Code 31-14-5-2(b) (1997). "Where an adult files a paternity action as a child's next friend, this twenty-year time limitation for filing such an action applies, and not the much shorter limitation periods that would apply if the adult was filing on [sic] a paternity action on his or her own behalf." *R.J.S. v. Stockton*, 886 N.E.2d 611, 614 n.2 (Ind. Ct. App. 2008).

moved to dismiss the paternity petition, and the trial court granted the motion.

*Stockton*, 886 N.E.2d at 615 (discussing *Jemerson*, 877 N.E.2d at 491-92). The ex-husband, while not the biological father, had "dated [the mother] during her pregnancy, married her when [the child] was only four months old, and lived with him as a parent until he was five years old[,]" when the mother and ex-husband divorced. *Jemerson*, 877 N.E.2d at 489.

[24] On appeal, we affirmed the trial court's order dismissing the maternal aunt's paternity action, concluding the aunt lacked standing as the child's next friend to file the action. *Id.* at 492. After reviewing a long line of cases proffered by the ex-husband, we declined to adopt the maternal aunt's position that no limitation existed as to who may act as a child's next friend and, instead, concluded "only parents, guardians, guardians ad litem, and prosecutors may bring paternity actions as next friends of children." *Id.* at 491. We also noted:

> As a general rule, a next friend for an infant plaintiff is required only when the infant is without a parent or general guardian, since ordinarily it is the duty of the parent or general guardian of an infant to institute and prosecute an action on behalf of the infant for the protection of his rights.

*Id*. at 492 (citing 42 Am. Jur. 2d *Infants* § 158 (2000)). Thus, we concluded the maternal aunt "[could] not reasonably argue [the child] was without a parent," *id.*, and given the fact the ex-husband had acted as the child's natural father for most of the child's life, we found "no persuasive grounds for treating [the ex-

husband] as anything other than a natural parent." *Id*. We concluded, because the legal father and the biological father bore the duty of acting on behalf of the child, no proper basis existed for the maternal aunt to have asserted standing as the child's next friend. *Id*.

[25] Similarly, in *Stockton*, we held alleged grandparents lacked standing as a child's next friend to file a petition in a paternity action where the child had a living natural mother and two court-appointed guardians, his maternal grandparents. 866 N.E.2d at 616. There, the child's mother, Amanda Stockton, represented to the Mullens that their son, Ryan Mullen, was the child's biological father. Ryan had died a few months before R.J.S. was born. Amanda's parents, the Stocktons, were named as the child's guardians. The Mullens filed a petition to establish paternity of R.J.S., naming themselves as next friends of R.J.S., and contemporaneously filed a petition for grandparent visitation. The Stocktons filed a motion to dismiss the petition to establish paternity, claiming the Mullens lacked standing. The trial court dismissed the petition with prejudice, and the Mullens appealed.

[26] We affirmed the trial court's dismissal of the Mullens' paternity action, finding support from *Jemerson*. We again rejected the notion that "there is no limit on who may file a paternity petition as a child's next friend," *id*. at 615, and noted "R.J.S. [had] a natural living mother and two court-appointed guardians, his maternal grandparents." *Id*. Because "[t]he law has entrusted safeguarding of [R.J.S.'s] interests in those persons," we reasoned, as we did in *Jemerson*, "[i]t [was] up to those persons to decide whether to initiate a paternity proceeding on

[R.J.S.'s] behalf." *Id.* We thus concluded the Mullens could not "circumvent the authority entrusted in R.J.S.'s natural and court-appointed guardians by filing a paternity action as his next friend." *Id.*

[27] While we acknowledged "the legislature has enacted modest measures to allow grandparents to seek visitation with their grandchildren[,]" *id.*, we noted "it has not . . . seen fit to allow alleged grandparents to file paternity actions." *Id.* We thus concluded "allowing the Mullens to [have] proceed[ed] with a paternity action as R.J.S.'s next friend would [have] circumvent[ed] what we presume[d] to be the legislature's deliberate choice not to include alleged grandparents as persons who may file a paternity action." *Id.*

[28] The rationale from *Jemerson* and *Stockton* applies here. Here, S.A.M.'s Mother and Father[6] are both alive and share joint legal custody of S.A.M. The law has entrusted safeguarding of S.A.M.'s interests to Mother and Father. It is their duty to act in S.A.M.'s best interests, not M.H.'s. Therefore, just as in *Stockton*, it is up to Mother and Father, as S.A.M.'s natural mother and legal father, to decide whether to initiate a paternity proceeding for S.A.M. As we pointed out

---

[6] Father has been the legal father of S.A.M. since S.A.M.'s birth because he executed a paternity affidavit the day S.A.M. was born. *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (a man is a child's legal father if the man executed a paternity affidavit in accordance with I.C. § 16-37-2-2.1 and the affidavit has not been rescinded or set aside pursuant to that same statute). To the extent the trial court found Father had never established his paternity of S.A.M., that finding is clearly erroneous. (*See* Tr. at 10 (trial court stating Father had never "requested to establish paternity . . . until recently")); *contra* Ind. Code § 31-14-2-1 ("A man's paternity may only be established: (1) in an action under this article; or (2) by executing a paternity affidavit in accordance with IC 16-37-2-2.1"). Father's filing of a paternity petition as a last-ditch effort to defend his interests in this action was unnecessary as the law has always recognized him as S.A.M.'s legal father.

in *Stockton*, the legislature made a decision to exclude alleged paternal grandparents as persons who may file a paternity action. Therefore, the trial court had no authority to allow M.H. to do so here.

[29] It appears from the record, that, despite the law, the trial court arrived at its decision based on what it perceived as "the truth" regarding the biological parentage of S.A.M. (Tr. at 21.) The trial court stated:

> [T]he Court is troubled by the fact that um that everyone also understands what the reality is and knows what the truth is in this case. And while the legal issues certainly are important um and they matter, certainly the Court hopes everyone also understands what the reality is and um [S.A.M.] doesn't live in a legal dictionary or a case law book. He's a real little boy.

(*Id.* at 21-22.) While the parties may have, at some point, agreed B.H. was the biological father of S.A.M., we note B.H. is no longer alive, B.H. never attempted to establish paternity to S.A.M., and there is no evidence B.H. had a relationship with S.A.M. when he was alive. S.A.M. is now ten years old, and Father is the only father S.A.M. has ever known. Father has acted as S.A.M.'s natural father all of S.A.M.'s life and S.A.M. refers to Father as "Dad." Thus, despite the "reality" of who S.A.M.'s biological father may be, we find no persuasive reason to treat Father as anything other than S.A.M.'s natural father. *See Jemerson,* 877 N.E.2d at 492 (there were no persuasive grounds for treating mother's ex-husband as anything other than child's natural father where the ex-husband married mother when child was four months old and lived with him as a parent until he was five years old). To do so would not be in the best interests

of S.A.M., Father, or this State. [7] *See In re Paternity of H.H.*, 879 N.E.2d 1175, 1178 (Ind. Ct. App. 2008) (where legal father signed paternity affidavit knowing he was not the biological father of child, setting aside his status as child's legal father many years later was not in the best interest of child, legal father, or the State).

### 2) The Mediation Agreement

[30] Father also argues the Mediation Agreement he entered with M.H. is void *ab initio* because M.H. lacked standing to file a petition to establish paternity. We agree.

[31] The term void *ab initio* means "void from the beginning" and "denotes an act or action that never had any legal existence at all because of some infirmity in the action or process." *Trook v. Lafayette Bank & Tr. Co.*, 581 N.E.2d 941, 944 (Ind. Ct. App. 1991), *trans. denied*. "'Void *ab initio*' has essentially the same meaning as 'void.'" *Id.* "[A] void judgment is subject to direct or collateral attack at any time." *M.S. v. C.S.*, 938 N.E.2d 278, 284 (Ind. Ct. App. 2010).

> [A]n order is "void" only when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification." "Voidable," however, describes an action or subject matter which nonetheless operates to

[7] We note the GAL's report indicating S.A.M. is not "emotionally equipped," (Appellant's App. Vol. II at 107), to be "placed in the middle" of the hostile relationship between Father and M.H. (*Id.* at 108.) Additionally, at the hearing, the trial court encouraged the parties to seek the professional help of a therapist or counselor to assist S.A.M. in processing the family dynamics he was experiencing at a young age.

accomplish the thing sough to be accomplished, until the fatal flaw is judicially ascertained and declared.

*Id.* (internal citations omitted). When a defect is merely "in form" or a "procedural irregularity, which is capable of being cured," it is merely voidable. *Id.* "An order is void where the trial court lacks the authority to act*." Kitchen v. Kitchen*, 953 N.E.2d 646, 651 (Ind. Ct. App. 2011).

[32] Here, the trial court lacked authority to order the parties into mediation because M.H. lacked standing bring the paternity action. Because a lack of standing cannot be cured, the trial court's order for the parties to conduct mediation, the resulting Mediation Agreement granting visitation rights to M.H., and the trial court's order approving the agreement, are void. *See Kitchen*, 953 N.E.2d at 651 (where maternal aunt and uncle lacked standing to petition for visitation with child, trial court lacked authority to grant visitation to them, and thus order granting visitation was void).

[33] M.H.'s argument in favor of enforcing the Mediation Agreement is essentially a public policy argument for favoring contracts. However, a "contract made in violation of statute is void and unenforceable." *Lee v. State*, 816 N.E.2d 35, 38 (Ind. 2004). M.H. never had the legal right to file a paternity action or seek Grandparent visitation rights. The fact that Father and Mother initially

agreed—however gratuitously—to allow M.H. and C.H. visitation is not a basis for enforcing an otherwise void agreement.[8]

### 3) Attorney Fees

[34] We review a trial court's decision to award or deny attorney fees for an abuse of discretion. *M.R.A.,* 41 N.E.3d at 296. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *G.G.B.W. v. S.W.*, 80 N.E.3d 264, 272 (Ind. Ct. App. 2017).

[35] The court in a paternity action may order a party to pay:

> (1) a reasonable amount for the cost to the other party of maintaining an action under this article; and

> (2) a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment.

Ind. Code § 31-14-18-2 (2006). "In making such an award, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such

---

[8] We can speculate Father and Mother's initial willingness to cooperate with M.H. in this case was because the parties had a reportedly close relationship with each other for many years. The GAL's report described Father and B.H. as having been "best friends since the age of nine[,]" (Appellant's App. Vol. II at 105), and described the parties as having had "a long history with each other and regarded each other as family for a long period of time." (*Id.* at 106.)

factors that bear on the reasonableness of the award." *M.R.A.,* 41 N.E.3d at 296. "The trial court may also consider any misconduct by one party that causes the other party to directly incur additional fees." *Id.* "When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper." *G.G.B.W.,* 80 N.E.3d at 272.

[36] The trial court denied Father's request M.H. pay his attorney fees, but made no findings in support thereof. We note M.H. filed this action in July 2013, over four years ago. In that time, Father has been forced to obtain a public defender and two different private attorneys to defend his interests as S.A.M.'s legal father in this action. In light of the fact this case has been allowed to proceed for over four years without M.H. having ever had standing, we remand this case to the trial court to make a determination as to the proper amount of attorney fees M.H. should pay Father. *See In re Paternity McGuire-Byers*, 892 N.E.2d 187, 194 (Ind. Ct. App. 2008) (award of appellee's attorney fees was proper in paternity action where all of appellate court's conclusions were in favor of appellee), *trans. denied.*

# Conclusion

[37] M.H. lacked standing as S.A.M.'s next friend to file a petition to establish paternity of S.A.M., and the trial court acted without authority in ordering the parties to conduct mediation. Because the trial court acted without authority when it ordered the parties to conduct mediation, the Mediation Agreement is void *ab initio.* We vacate the trial court's March 19, 2014, order enforcing the

Mediation Agreement and remand this cause so the trial court may decide a reasonable amount of attorney fees to award to Father.

[38] Reversed and remanded.

Barnes, J., and Bradford, J., concur.