

FILED

Feb 21 2019, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Christine Douglas
Harden Jackson LLC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan A. Benefiel,

*Appellant-Petitioner,*

v.

Junko M. Stalker,

*Appellee-Respondent*

February 21, 2019

Court of Appeals Case No.
18A-JP-2078

Appeal from the Hamilton Circuit
Court

The Honorable Paul A. Felix,
Judge

Trial Court Cause No.
29C01-1703-JP-375

**Vaidik, Chief Judge.**

## Case Summary

[1]     Ryan A. Benefiel ("Father") appeals the trial court's order that he pay $20,000 of the nearly $40,000 in attorney's fees incurred by Junko Makiah Stalker ("Mother") in this paternity action. We affirm.

# Facts and Procedural History

[2] In August 2016, E.B. was born out of wedlock to Mother and Father. Mother and Father lived together from E.B.'s birth until the end of February 2017, when Mother and E.B. moved out. Thereafter, Father filed a petition to establish paternity, custody, parenting time, and child support and requested an expedited hearing. After several continuances and other motions, the trial court ordered the parties to participate in mediation, which was unsuccessful. A preliminary hearing was held in October 2017, during which the trial court heard "evidence and argument on issues of parenting time only." Appellant's App. Vol. II p. 40. Following the hearing, the trial court ordered as follows:

> 3. The Court finds that Father's request for additional parenting time above what is permitted in the Indiana Parenting Time Guidelines is unreasonable considering that for the first month after the parties separated, Father had no desire to provide care for or have any custody or control of [E.B.], and considering the multiple parenting time opportunities Father missed.

*Id.* at 41. Accordingly, the court awarded Father parenting time consistent with the guidelines, which, based on E.B.'s age, was one overnight per week. *Id.*

[3] Following the trial court's order, the parties had many disputes about parenting time. In February 2018, Mother requested a parenting coordinator "to help improve the parties' ability to communicate and to do so more effectively." *Id.* at 48. Thereafter, the trial court appointed a parenting coordinator.

[4] A final hearing was held in June 2018. Although the parties had stipulated to some of the issues, there were still many issues to be addressed at the hearing, including whether Father should receive additional parenting time, where the parties should meet to exchange E.B. for parenting time, the amount of Father's child-support arrearage, and how much Father should pay toward Mother's attorney's fees. Ex. A. The parenting coordinator testified about the difficulties she had encountered with Father. She described an incident during one of the parenting-time exchanges where Father called Mother a racial epithet in the presence of E.B. The parenting coordinator also testified about a joint phone call she had with the parties. Based on Father's demeanor during that call, she believed he needed anger-management counseling. Finally, the parenting coordinator testified that none of the issues Father raised with her had any merit. Tr. p. 14.

[5] Evidence was also presented about Father's income. Father made $31,746.13 in 2017. However, he took a new job in January 2018, which has an annual salary of $47,923.20. Father acknowledged that this was "quite an increase in pay." *Id.* at 45. In addition to his increased salary, Father received a company car and is eligible for bonuses. In contrast, Mother's annual salary as a waitress is approximately $15,000.

[6] Finally, Mother's attorney, a certified family-law specialist, testified about her work in this case. She submitted her thirty-page attorney-fee statement, which reflects fees from March 2017 to June 2018 of $35,936 and expenses of $114.49. Ex. G. She testified that this case was "the most expensive case I have ever

done in 20 years." Tr. p. 77. Mother's attorney explained that the facts were not complicated and that it was the type of case that should have been resolved through the attorneys or mediation. However, neither worked in this case. Mother's attorney explained that what "has made this case complicated is the overwhelming amount of requests for attorneys to get involved, specifically me, to work out issues with Father." *Id.* She then highlighted some of Father's behaviors that caused her to spend so much time on the case: (1) Father requested an expedited hearing and sought a preliminary injunction; (2) Father made allegations about Mother that involved the police; (2) Father alleged that Mother abused drugs; (3) Father did not cooperate in discovery; (4) Father alleged that Mother was physically and emotionally harming E.B., which got CPS involved; and (5) Mother twice sought a protective order. *Id.* at 77-83. In short, Mother's attorney believed that her fees would have been "a lot less if there was some responsive cooperation from the other side." *Id.* at 83. In contrast to Mother's attorney's fees of nearly $40,000, Father's attorney's fees for the same period were $11,960. Ex. 2.

[7] At the end of the hearing, the trial court ordered, among other things, Father to have parenting time pursuant to the guidelines (but not any additional time), that the parties shall meet at a restaurant in Castleton to exchange E.B., that Father shall pay an extra $15 per week toward his child-support arrearage, and that Father must pay $20,000 of Mother's attorney's fees. As for attorney's fees, the court explained:

> [It] is [Father's] behavior that has caused [Mother] to incur a
> great deal of additional attorney fees than what would normally
> be appropriate. [Father] does earn a substantial amount more
> income than [Mother] does, nearly three times the amount of
> income as [Mother]. And will therefore find it appropriate based
> upon those things to require him to pay [$20,000] of her attorney
> fees.

Tr. p. 97; *id.* at 90 (trial court to Father's attorney: "[Mother's attorney] has been asking for formal discovery for a long period of time and has been getting back essentially nothing from your client, and your client is going to have to pay for the obstreperous way that he has behaved towards the resolution of the discovery matters in this case."); Appellant's App. Vol. II p. 18 (written order).

[8] Father now appeals.

# Discussion and Decision

[9] Father contends that the trial court erred in ordering him to pay $20,000 of Mother's attorney's fees. We review a decision to award attorney's fees and the amount of any award for an abuse of discretion. *Allen v. Proksch*, 832 N.E.2d 1080, 1102 (Ind. Ct. App. 2005).

[10] Pursuant to Indiana Code section 31-14-18-2(a)(2), the trial court in a paternity action may order a party to pay a reasonable amount for attorney's fees incurred by the other party. *See also* Ind. Code § 31-16-11-1 (providing that a trial court may periodically order a party to a child-support proceeding to pay a reasonable amount for attorney's fees); Ind. Code § 31-17-7-1 (same for

proceedings for custody/custody modification and parenting time). In making such an award, the court must consider the parties' resources, their economic conditions, their respective earning abilities, and other factors that bear on the reasonableness of the award. *In re Paternity of S.A.M.*, 85 N.E.3d 879, 890 (Ind. Ct. App. 2017); *G.G.B.W. v. S.W.*, 80 N.E.3d 264, 272 (Ind. Ct. App. 2017), *trans. denied*. The court may also consider any misconduct by one party that causes the other party to directly incur fees. *S.A.M.*, 85 N.E.3d at 890; *G.G.B.W.*, 80 N.E.3d at 272. Moreover, when one party is in a superior position to pay fees over the other party, an award of attorney's fees is proper. *G.G.B.W.*, 80 N.E.3d at 272.

[11] Here, the trial court ordered Father to pay $20,000 of Mother's attorney's fees for two reasons: (1) Father earns a "substantial" amount more than Mother and (2) Father's behavior caused Mother "to incur a great deal of additional attorney fees than what would normally be appropriate." Father challenges each reason. First, Father argues that the trial court erred "by failing to receive or consider evidence of the parties' respective economic conditions." Appellant's Br. p. 11. But the trial court did. Evidence was presented that Father earns $47,923.20 per year in his new job, has a company car, and has the potential to earn bonuses. At the hearing, Father even acknowledged that his $17,000 pay raise was "quite an increase." Mother, in comparison, earns approximately $15,000 per year as a waitress. As the trial court found, Father earns three times more than Mother. In addition, the parties filed financial declarations, which set forth their incomes and expenses. *See* Appellant's App.

Vol. II p. 52 (Mother's financial declaration dated May 2018); Appellee's App. Vol. II p. 3 (Father's financial declaration dated October 2017, which was not updated to reflect his new salary). Although Father speculates about the existence of other assets and liabilities the parties may have, he does not cite any evidence that such assets or liabilities actually exist. The parties' economic conditions support an award of attorney's fees in this case. *Cf. Montgomery v. Montgomery*, 59 N.E.3d 343, 355 (Ind. Ct. App. 2016) (in holding that the trial court abused its discretion in ordering Father to pay a portion of Mother's attorney's fees, we found that "[t]he only evidence presented [regarding the parties' respective economic conditions] was that Mother earns $15 per hour at her job, while Father earns $17 per hour"), *trans. denied*.

[12] Father next argues that the trial court erred "by awarding fees for Father's misconduct without relating those fees to misconduct." Appellant's Br. p. 15. Father asserts that the trial court should have specifically identified what fees Mother incurred because of his misconduct. Mother's attorney submitted a thirty-page attorney-fee statement, which sets forth her fees in detail. In addition, Mother's attorney testified that this case was the most expensive case she had done in twenty years. She added that this case did not need to be so expensive and only was because of Father's actions. She then testified in detail about Father's actions that caused her to spend so much time on this case. *See* Tr. pp. 77-83. Although Mother's attorney did not put a specific dollar amount on the attorney's fees that were attributable to Father's misconduct, the trial court, which was very familiar with this case, did not abuse its discretion in

determining that Father's behavior caused Mother to incur "a great deal" of additional attorney's fees. This is supported by Mother's attorney's fees of nearly $40,000 when compared to Father's attorney's fees of $11,960.[1] We therefore affirm the trial court.

Affirmed.

Mathias, J., and Crone, J., concur.

---

[1] Father notes that approximately $2200 of Mother's attorney's fees were attributable to her work in a small-claims matter involving Mother and Father's parents—but not Father. Mother's attorney testified about this part of her fees during the hearing. Father's attorney cross-examined her but did not object or ask any questions about the small-claims matter. In addition, the trial court ordered Father to pay only half of Mother's attorney's fees, which could have excluded the $2200.