## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2020, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Tiffany Boone
Syracuse, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiffany Boone,<br>*Appellant-Respondent,*<br><br>v.<br><br>Federico Ramirez,<br>*Appellee-Petitioner.* | January 30, 2020<br><br>Court of Appeals Case No. 19A-JP-1823<br><br>Appeal from the Hamilton Superior Court<br><br>The Honorable Jonathan M. Brown, Judge<br><br>Trial Court Cause No. 29D02-1810-JP-1857 |

**Bradford, Chief Judge.**

# Case Summary

[1] Tiffany Boone ("Mother") and Federico Ramirez ("Father") are the biological parents of A.R. ("Child"). Child was born on January 15, 2018. On August 1, 2018, Father initiated proceedings to establish paternity and resolve issues relating to custody, visitation, and child support. After Father's paternity was established, the juvenile court issued an order (1) indicating that Mother and Father would share joint legal and physical custody of Child; (2) setting forth a parenting time schedule; (3) establishing Father's child support obligation, including an amount retroactive to the date paternity was established; (4) ordering Father to pay certain birth-related expenses; (5) establishing the Child's last name as Ramirez; (6) rejecting Father's request to find Mother in contempt; and (7) ordering Mother to pay $12,000.00 of Father's attorney's fees. Mother challenges portions of this order on appeal. We affirm.

# Facts and Procedural History

[2] Child was born on January 15, 2018. In or about early-April 2018, Mother informed Father that he was the biological father of Child and began allowing Father to exercise parenting time with Child. On or about April 26, 2018, Father and Child submitted DNA for testing, the results of which revealed a 99.9998% probability of paternity.

[3]  On or about June 15, 2018, Mother's partner, Tiffany Householder, filed an adoption petition in the juvenile court in Hamilton County.[1]  Father was not provided with notice of the adoption petition.  Father filed a petition to establish paternity in the Elkhart Circuit Court on August 1, 2018.  On August 28, 2018, the Elkhart Circuit Court issued an order establishing Father as Child's legal father and awarding Father "parenting time and temporary physical custody with [Child] each Saturday for a period of four (4) hours between 12:00 noon and 6:00 p.m."  Appellant's App. Vol. II p. 29.  The Elkhart County case was subsequently consolidated with the Hamilton County adoption case in the juvenile court.  The juvenile court denied Mother's request to set aside the August 28, 2018 paternity order after Father submitted the DNA test results indicating a "99.9998%" probability of paternity.  Appellant's App. Vol. II p. 51.  At some point, Mother and Father agreed to increase Father's parenting time to ten hours "every other alternating Saturday or Sunday from 8:00 a.m. to 6:00 p.m."

[4]  On July 8, 2019, the juvenile court issued its "Final Decree of Paternity." Appellant's App. Vol. II pp. 14–24.  In this order, the juvenile court ordered that "Mother and Father shall share joint legal and joint physical custody" of

---

[1] The record seems to indicate that each of the involved parties resided in Northern Indiana at the time the adoption petition was filed.  It is unclear from the record why the adoption petition was filed in Hamilton County.

Child.  Appellant's App. Vol. II p. 17.  With regard to parenting time, the

juvenile court ordered that

> 23.    Upon execution of this Order, Father shall exercise
> parenting time beginning July 13, 2019, and every other weekend
> thereafter, beginning on Saturdays at 9:00 a.m. and concluding
> Sundays at 6:00 p.m., and on Wednesday afternoons from 3:00
> p.m. - 6:00 p.m. and on Friday afternoons from 3:00 p.m. - 6:00
> p.m.  Father shall have the opportunity to pick up [Child] from
> daycare earlier than 3:00 p.m. on Wednesday/Friday afternoons
> should his work schedule allow him to do so;
>
> 24.    Beginning January 3, 2020, Father shall exercise parenting
> time every other weekend, beginning on Friday afternoons no
> later than 6:00 p.m., and concluding Sundays at 6:00 p.m., and
> on Wednesday afternoons from 3:00 p.m. - 7:00 p.m.  Father
> shall have the opportunity to pick up [Child] from daycare earlier
> than 3:00 p.m. should he be available to do so, as set forth in
> paragraph 23 above, and this applies to the Friday afternoon
> every other weekend pickups as well;
>
> 25.    … Holidays, special days, and extended parenting time
> shall occur pursuant to the [Indiana Parenting Time Guidelines]
> as appropriate for a child age 5 and up from the date this order is
> executed (including overnights), despite the fact the minor child
> is currently under the age of five (5)[.]

Appellant's App. Vol. II pp. 18–19 (underlining in original).  As for child

support, the juvenile court ordered that "the child support obligation is Two

Hundred Sixty Seven Dollars ($267.00) per week.  Beginning on January 3,

2020, the child support obligation is Two Hundred Forty Three Dollars

($243.00) per week as Father will have more overnights with [Child]."

Appellant's App. Vol. II p. 20.  In addition,

> Father shall pay directly to Mother, as retroactive child support, $267.00/week for 46 weeks, which totals the sum of $12,282.00. This amount reflects child support back to August 28, 2018, the date Father established paternity. Father shall pay Mother an additional $20.00/week towards the child support arrears, in addition to his basic child support obligation[.]

Appellant's App. Vol. II pp. 21–22. The juvenile court also (1) denied Father's request to find Mother in contempt, (2) ordered Father to pay one-half of all medical bills associated with Child's birth, (3) ordered that Mother and Father shall alternate the tax credit for Child, and (4) ordered Mother to pay $12,000.00 of Father's attorney's fees.

# Discussion and Decision

[5] "Where, as here, the appellee has failed to submit a reply brief, we need not develop an argument on the appellee's behalf." *Twin Lakes Reg'l Sewer Dist. v. Teumer*, 992 N.E.2d 744, 746 (Ind. Ct. App. 2013) (citing *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). "Instead, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* at 746–47. "Prima facie error in this context means 'at first sight, on first appearance, or on the face of it.'" *Id.* at 747 (quoting *Trinity Homes*, 848 N.E.2d at 1068). "We will affirm if the appellant is unable to meet this burden." *Id.*

[6] In appealing the juvenile court's July 8, 2019 order, Mother appears before the court as a *pro se* litigant.

It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. [*Twin Lakes*, 992 N.E.2d at 747.] This means that pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). These consequences include waiver for failure to present cogent argument on appeal. *Id.* While we prefer to decide issues on the merits, where the appellant's noncompliance with appellate rules is so substantial as to impede our consideration of the issues, we may deem the alleged errors waived. *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), *trans. denied* (2015), *cert. denied* (2015). We will not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.*

*Basic v. Amouri*, 58 N.E.3d 980, 983–84 (Ind. Ct. App. 2016).

[7]     Mother's appellate brief is deficient in numerous respects. Specifically, her statement of the case does not comply with Appellate Rule 46(A)(5), which indicates that this section shall "briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court or Administrative Agency. Page references to the Record on appeal or Appendix are required in accordance with Rule 22(C)." Mother's statement of the case does not refer to the record or appendix and includes only one sentence, which reads: "Appellant-Respondent, Tiffany Boone (Mother), appeals the trial court's Order, FINAL DECREE OF PATERNITY." Appellant's Br. p. 4.

[8]     Appellate Rule 46(A)(6) requires that a statement of the relevant facts "be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C)." Mother has failed to comply with this subsection as her statement of the facts is completely devoid of any citation to specific pages in either the record or her appendix.

[9]     Finally, Mother's argument section does not comply with Appellate Rule 46(A)(8)(a), which provides that each argument must contain contentions supported by cogent reasoning and citation to relevant authority and relevant portions of the record. Mother raises four contentions on appeal. As the party with the burden of establishing error on appeal, Mother is required to cite pertinent authority and develop reasoned arguments supporting her contentions. *See Basic*, 58 N.E.3d at 985. Her brief, however, is completely devoid of citations to the record and largely devoid of citations to relevant authority supporting her allegations. While Mother refers to one case and a few statutes in connection to her first contention, she does not develop a cogent argument as to how these authorities support her argument. She additionally fails to cite to any relevant authority in connection to her other contentions. Despite these deficiencies, we will attempt to review the merits of each of Mother's contentions.

# I. Parenting Time

Mother takes issue with the portion of the juvenile court's order relating to parenting time and custody, arguing that the order did not consider Child's best interests.

> We initially observe that in all parenting time controversies, courts are required to give foremost consideration to the best interests of the child. *Downey v. Muffley*, 767 N.E.2d 1014, 1017 (Ind. Ct. App. 2002). When reviewing a trial court's determination of a parenting time issue, we grant latitude and deference to the trial court and will reverse only when the trial court abuses its discretion. *Gomez v. Gomez*, 887 N.E.2d 977, 981 (Ind. Ct. App. 2008). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* If there is a rational basis for the trial court's determination, then no abuse of discretion will be found. *Downey*, 767 N.E.2d at 1017. Therefore, on appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006). Further, we may not reweigh the evidence or judge the credibility of the witnesses. *Downey*, 767 N.E.2d at 1017.

*In re Paternity of C.H.*, 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010).

In arguing that the juvenile court failed to consider Child's best interests when awarding Father parenting time and joint custody, Mother stated her belief that Father did not act fast enough to establish his paternity, arguing that he "should have immediately taken legal action to gain rights to" Child after Mother informed him that he was Child's biological father. Appellant's Br. p. 15. The

record reveals that Father initiated DNA testing within one month of Mother informing him that he was Child's father and soon thereafter initiated legal proceedings to establish paternity. Furthermore, the juvenile court explicitly disagreed with Mother's assertion that Father sat on his rights and waited too long before initiating paternity proceedings. Specifically, in its January 2, 2019 order, the juvenile court found

> 27. In the instant case, [Father] demonstrated his commitment by not taking matters into his own hands, but by seeking the assistance of the Court in order to establish paternity and parenting time with his child. Simply because [Householder] has denied him parenting time, does not mean he hasn't taken steps to show his commitment to parenthood to this Court.
>
> …
>
> 30. [Father] has not sat on his rights. He filed a paternity action to regain his parenting time with [Child]. The Indiana General Assembly favors the public policy of establishing paternity if a child is born out of wedlock. I.C. § 31-14-1-1.

Appellant's App. Vol. II pp. 58–59.

[12] Mother also claims that the juvenile court failed to consider known communication issues between her and Father, including disagreements relating to the location of Child's daycare facility, Mother's wish to relocate to a house located less than thirty minutes from where she had been living, and Father's alleged hesitation to change weekends with Mother. Contrary to Mother's claim, the juvenile court's July 8, 2019 order indicates that the court considered the alleged communication issues.

[13]     The parenting time ordered by the juvenile court reflects an increase on the amount of parenting time previously agreed to by Mother and Father. Mother claims that she believes that this increased parenting time will negatively impact Child's growth because it has caused a disruption of Child's routine and schedule. Mother specifically takes issue with the fact that the juvenile court awarded Father overnight visitation with Child. While the increased parenting time and overnight visitation may result in a brief adjustment period for all involved, Mother has failed to point to any evidence to support her claim that the increased parenting time with Father is not in Child's best interest.

[14]     Given the record before us on appeal, we cannot say that the juvenile court abused its discretion in awarding Father joint custody of or increased parenting time with Child. Mother's claims relating to the custody and parenting time issues amount to a request to reweigh the evidence, which we will not do. *See In re C.H.*, 936 N.E.2d at 1273.

## II. Child Support

[15]     Mother also takes issue with the portion of the juvenile court's order relating to Father's child-support obligation. "The paramount concern of a court in any case involving child support must be focused on the best interests of the child." *Ward v. Ward*, 763 N.E.2d 480, 482 (Ind. Ct. App. 2002). "A trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). "We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law." *Id.* "A decision is

clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court." *Id.*

[16] Mother asserts that the juvenile court erred in ordering that Father's retroactive child-support obligation date back to the date that his paternity was formally established by the Elkhart Circuit Court. Although the DNA testing proving that Father is Child's biological father was completed on May 1, 2018, the Elkhart Circuit Court did not formally establish Father's paternity until August 24, 2018. Mother cites to no case law indicating that the juvenile court should have applied the May 1, 2018 test-completion date in imposing Father's retroactive child-support obligation instead of the date the court formally established paternity. We cannot say that the juvenile court erred in this regard.

[17] Mother also asserts that the juvenile court "has abused its discretion in allowing Father to pay his retroactive child support obligation of $12,282.00 over a 46-week period, leaving Father in a continuing cycle of being 46 weeks behind in current child support at all times." Appellant's Br. p. 22. Mother, however, seems to misunderstand the juvenile court's order. The juvenile court found that Father's child-support obligation commenced upon the establishment of paternity and, as a result, he was in arrears for a forty-six-week period, *i.e.*, the time between the establishment of paternity and the entry of the juvenile court's final order. The juvenile court further determined that the arrearage for that period equaled $12,282.00. Contrary to Mother's assertion, however, the juvenile court did not order that Father would pay off this amount in a manner that would leave him continually behind in child support. Instead, it ordered

him to pay an additional $20 per week, on top of his current obligation, to be applied towards the arrearage. Mother argues that the juvenile court should have ordered Father to pay the entire $12,282.00 retroactive child support obligation "within 60 days." Appellant's Br. p. 22. Mother, however, has pointed to nothing in the record to suggest that such was possible, let alone to establish that the juvenile court erred by failing to order Father to do so.

[18] Mother also requests that we "review the weekly amount of child support to be paid to Mother." Appellant's Br. p. 22. In making this request, Mother does not point to any alleged error by the juvenile court or cite to any authority suggesting that the juvenile court erred in setting Father's child-support obligation. We therefore conclude that Mother has waived her challenge to the amount of Father's weekly child support obligation. *See Basic*, 58 N.E.3d at 984.

# III. Name Change

[19] Mother contends that the juvenile court abused its discretion in granting Father's petition to change Child's surname from Boone to Ramirez.

> A biological father seeking to obtain a name change of his nonmarital child bears the burden of persuading the trial court that the change is in the child's best interests. *Petersen v. Burton*, 871 N.E.2d 1025, 1029 (Ind. Ct. App. 2007). Absent evidence of the child's best interests, the father is not entitled to obtain a name change. *J.T. v. S.W. (In re Paternity of Tibbitts)*, 668 N.E.2d 1266, 1267–68 (Ind. Ct. App. 1996), *trans. denied*. We review the trial court's order in such cases under an abuse of discretion standard. *In re Paternity of M.O.B.*, 627 N.E.2d 1317, 1318 (Ind.

Ct. App. 1994) (citation omitted). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Petersen*, 871 N.E.2d at 1028.

*C.B. v. B.W.*, 985 N.E.2d 340, 343 (Ind. Ct. App. 2013).

[20] Mother claims that changing Child's surname to Ramirez would require that certain identification and legal documents be changed to reflect Child's new surname. She suggests that the juvenile court should have instead ordered that Child's surname be changed to Boone-Ramirez, to reflect his connection to both parents. Mother claims, without providing any citations to supporting authority, that such a change would not require similar changes to identification and legal documents as changing Child's surname to Ramirez. Mother has failed to establish that the change of Child's surname ordered by the juvenile court will result in any detriment to the Child or that the juvenile court abused its discretion by finding that the name change was in Child's best interests.

# IV. Attorney's Fees

[21] Mother also takes issue with the portion of the juvenile court's order that she pay $12,000.00 of Father's attorney's fees. Indiana Code section 31-14-18-2(a)(2) provides that a juvenile court "may order a party to pay … a reasonable amount for attorney's fees."

> In making such an award, the court must consider the parties' resources, their economic conditions, their respective earning

abilities, and other factors that bear on the reasonableness of the award. *In re Paternity of S.A.M.*, 85 N.E.3d 879, 890 (Ind. Ct. App. 2017); *G.G.B.W. v. S.W.*, 80 N.E.3d 264, 272 (Ind. Ct. App. 2017), *trans. denied*. The court may also consider any misconduct by one party that causes the other party to directly incur fees. *S.A.M.*, 85 N.E.3d at 890; *G.G.B.W.*, 80 N.E.3d at 272. Moreover, when one party is in a superior position to pay fees over the other party, an award of attorney's fees is proper. *G.G.B.W.*, 80 N.E.3d at 272.

*Benefiel v. Stalker*, 119 N.E.3d 1133, 1136 (Ind. Ct. App. 2019). "We review a trial court's decision to award or deny attorney fees for an abuse of discretion." *S.A.M.*, 85 N.E.3d at 890. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *G.G.B.W.*, 80 N.E.3d at 272.

[22] In this case, Mother claims that the juvenile court abused its discretion by ordering her to pay Father's attorney's fees because the court did not find her in contempt and "gave no reason as to why Father has been awarded $12,000.00 in attorney fees." Appellant's Br. p. 24. We disagree.

[23] On January 2, 2019, the juvenile court issued an order which discussed Mother's request to set aside the August 28, 2018 paternity determination and Father's standing to contest Householder's adoption petition. While the order indicated that it was taking Father's request for attorney's fees under advisement pending resolution of the case, it outlined misconduct by Mother and Householder, providing, in relevant part, as follows:

19.     Specifically, in rhetorical paragraph 5 of the Petition for Adoption filed under this cause, [Householder] states under oath "there is not an acknowledged putative father." That statement is not disputed. However, [Householder] went on to state under oath in the same paragraph "the mother of the child having not disclosed the identity or whereabouts of the father of the child, but that the child were [sic] conceived in the State of Indiana." The additional clauses are either patently false or not personally known to the affiant. [Father] testified he met [Householder] at one of his parenting time exchanges with the child, when he was permitted to leave with the child with [Mother's] blessing. Further, [Householder] could only know where the child was conceived based upon hearsay from [Mother] (unless she was present for conception and no evidence was presented to the Court on this issue by any of the parties).

20.     Based upon the evidence that [Householder] knew [Father] was the father of the child, the Court finds her statement in rhetorical paragraph 5 of the Petition for Adoption to be false and misleading. Based upon the Court's observations of [Mother and Householder], and the evidence presented, the Court has concerns about the contents of the petition for adoption and finds Householder and [Mother] lack credibility.

…

28.     [Mother and Householder] have effectuated a fraud upon this Court with the filing of the petition for adoption with their lack of disclosure. [Mother and Householder] have made a material misrepresentation to this Court by claiming another man may be the biological father of the child when they knew or should have known such a statement was false, particularly in light of the fact [that Mother] was aware of the DNA test that [Father] submitted to the Elkhart Circuit Court in order to obtain his paternity decree.

…

> 33. This Court acknowledges that notice was not required to be given to [Father] for the adoption proceeding, yet it is [Mother's] argument she did not get proper notice herself in order to contest the paternity action properly. [Mother and Householder's] manner of litigating is either dishonest or in bad faith, and not in the best interests of the minor child. There is a certain degree of irony in that [Mother] is seeking equitable relief from this Court with regards to the August 28, 2018 judgment, but one must do equity to receive equity.

Appellant's App. Vol. II pp. 56–61 (emphasis omitted). When read together, the juvenile court's January 2 and July 8, 2019 orders provide an explanation for the award. Given the juvenile court's determination that Mother lacked credibility, effectuated a fraud on the court, and her "manner of litigating is either dishonest or in bad faith, and not in the best interests of [Child]," Appellant's App. Vol. II p. 59, we cannot say that the juvenile court abused its discretion in ordering Mother to pay $12,000.00 of Father's attorney's fees.

[24] The judgment of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.