
FILED
Jul 16 2015, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Deborah M. Agard
Law Office of Deborah M. Agard
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Julie Andrews
Brian K. Zoeller
Maggie L. Sadler
Cohen & Malad, LLP
Indianapolis, Indiana

## I N   T H E
# COURT OF APPEALS OF INDIANA

In re the Paternity of
M.R.A. and L.R.C.:

M.A.,

*Appellant-Petitioner,*

v.

B.C.,

*Appellee-Respondent,*

July 16, 2015

Court of Appeals Case No.
32A01-1409-JP-386

Appeal from the Hendricks Circuit
Court
The Honorable Jeffrey Boles, Judge
Cause No. 32C01-1209-JP-89

**Robb, Judge.**

# Case Summary and Issues

[1]     Michael Ayers ("Father") appeals the trial court's order regarding custody, parenting time, and child support for his two children, M.R.A. and L.R.A, with Brandy Caldwell ("Mother"). He raises two issues for our review:  1) whether

the trial court erred in vacating an agreed paternity order and establishing Father's child support obligation and setting his arrearage, including reimbursement to Mother for child care costs; and 2) whether the trial court erred in ordering Father to pay Mother's attorney's fees. Concluding the trial court did not abuse its discretion in its determination regarding attorney's fees, we affirm that part of the trial court's order. However, concluding the trial court applied an incorrect legal standard to the determination of child support and that its judgment regarding child care expenses is unsupported by the evidence, we reverse and remand in part.

## Facts and Procedural History

[2] M.R.A. was born out-of-wedlock to Mother in 2006, and Father executed a paternity affidavit at that time. In 2007, Mother married Vu Ho, and L.R.A. was born during that marriage. After Mother and Ho were divorced in 2012, Father filed a petition to establish paternity of L.R.A. and to determine issues of custody, support, and parenting time with respect to both children. A subsequent DNA test confirmed that Father was the biological father of L.R.A. When the parties appeared on January 3, 2013 for a scheduled hearing on Father's petition, Father's attorney advised the court that an agreement had been reached: "The parties agree on the paternity of both of these children now and they agree on parenting time, custody, support, everything." Transcript at 5. Mother's attorney agreed with that statement, noting only that there was a procedural issue regarding whether separate cause numbers were required for

each child. The parties testified to the terms of their agreement. Mother's attorney then prepared for the court's approval the following written agreement that was signed by both parties and their attorneys:

1. That the issue of the rights of Vu Ho, who is the presumed father of [L.R.A.] based on [Mother's] marriage to him and subsequent birth of the child during the marriage, remain for resolution by the Court.

2. That the issue of whether this action ought to be dismissed as to one of the children and an additional cause number sought for that child, either by petition and payment of the filing fee or petition to waive such payment is reserved for the Court's determination.

3. That in the event of dismissal of one of the children from this action and the filing of a petition respecting the paternity, support and/or custody of that child, such action shall be consolidated immediately within this cause and the agreement of the parties deals with paternity of [L.R.A.] and the custody, support and parenting time of both [M.R.A.] and [L.R.A.]

4. That [Father] is the father of [M.R.A.] born to [Mother] February 18, 2006 . . . and that paternity was established by the execution of an affidavit at the time of her birth.

5. That [Father] is the father of [L.R.A.] born to [Mother] August 29, 2008 . . . at a time when [Mother] was married to Vu Ho (and their marriage was subsequently dissolved August 7, 2012 . . .), and both parties are satisfied that the DNA testing they voluntarily underwent during the pendency of this matter established [Father's] paternity probability at 99.99%.

6. That [L.R.A.'s] surname shall be changed to Ayers and her birth certificate shall be ordered amended to show [Father] . . . as the father.

7. That the parties shall share joint legal custody and joint physical custody of the children and shall divide parenting time upon the following schedule: On Mondays and Wednesdays the children shall always spend overnights with [M]other; on Tuesdays and Thursdays the children shall always spend overnights with [F]ather; and on weekends (that is, Friday, Saturday and Sunday overnights) the

parties shall alternate weekends with the children . . .; further provided that because [F]ather works at nights and sleeps days, while [M]other is unemployed, the children (subject to either of them being school age and at school most of the day) shall spend the daytimes with [M]other as day care for [F]ather unless a member of [F]ather's household is home on any particular day and the children shall be in day care and/or pre-school when [M]other is not so available; and further provided that the parties may agree to change this schedule from time to time to serve the best interest of the children as they deem necessary.

8. That each party shall in addition to the foregoing parenting schedule of regular times, be entitled to select a one week period each summer for an uninterrupted week for the children with that parent; that the holidays shall be as agreed upon and in the absence of agreement pursuant to the Indiana Parenting Time Guidelines with [F]ather treated as the non-custodial parent for the purposes of such guidelines only.

9. That there shall be a $0.00 support order against each of the parents and the parties are deviating from the Indiana Child Support Guidelines on account of the equal split parenting time, [M]other's current unemployment and the specific expenses [F]ather will be paying: [Father] shall pay all uninsured medical expenses incurred by the children (including reimbursement to [Mother] of any necessary such expense out of her pocket upon presentation of the receipt) and all educational expenses including any day care and/or pre-school.

* * *

11. That as a cash medical support order, the deviation reasons of paragraph 9 shall apply and [Father] shall provide health insurance for both children and shall pay all of the uninsured medical, dental and optical expenses for the children and [Mother] shall supply her Medicaid coverage for the children as secondary coverage for so long as she qualifies for the same.

12. That beginning for the tax year 2013 and subsequent years, [Father] shall be entitled to claim [M.R.A.] as his dependent for tax purposes and [Mother] shall be entitled to claim [L.R.A.] as her dependent for tax purposes.

13. That in the event any provision in this agreement shall be rejected by the Judge or subsequently determined to be invalid, all

provisions not affected thereby shall remain in force and effect; and it is the express intent of the parties that this agreement shall be honored by them prior to approval by the Court and without the necessity of approval by the Court, subject to the issues reserved for decision to the Court and both parties agree to cooperate with any such decisions as promptly as possible.

Appellant's Appendix at 58-61. On January 16, 2013, the trial court signed an "Order Approving Agreement" that appeared at the end of the agreement in the following form:

> Comes now the Court, having heard the testimony presented in open Court January 3, 2013, and having seen and examined the foregoing written agreement of the parties, and finds that the agreement should be approved and the Court will issue a separate decision with respect to the issues reserved to the Court.
>
> ORDERED, that the foregoing agreement is hereby approved and made a part of this Order.

*Id.* at 61 ("2013 Order").

[3]     Both parties thereafter filed petitions for modification raising various issues including custody and support. The trial court held a hearing on July 3, 2014, which began with the following status update:

> The Court: What's the status of this case then?
>
> [Mother's counsel]: The status of the case your Honor is that we are here today for a final hearing on a paternity matter. . . .
>
> The Court: Is that your understanding of the case [Father's counsel]?
>
> [Father's counsel]: Your Honor agreed part; we have an order from January two-thousand and thirteen that addressed custody and support. A modification was subsequently filed by [M]other in March of two-thousand thirteen. So we're treating this as a modification from that point forward.
>
> The Court: Very good . . . .

Tr. at 19-20. On August 11, 2014, the trial court entered Findings of Fact and Conclusions of Law. Finding of Fact number 18 states, "After a conference in chambers, the Court determined that the agreement of January 16, 2013 was a provisional paternity agreement and the hearing for July 3, 2014 was a final hearing on the initial paternity matters."[1] Appellant's App. at 23. The court then concluded that the parties' shared legal and physical custody of the children would continue, applying the factors for an initial custody determination in Indiana Code section 31-14-13-2; ordered parenting time changed to a "2-2-3 schedule";[2] ordered Father to pay child support in the amount of $143 per week, retroactive to January 1, 2012, the date the parties stopped cohabitating, and set his arrearage at $17,645; ordered Father to pay $3,046.80 to Mother as reimbursement of work-related child care expenses dating back to January of 2012; and ordered Father to pay Mother's attorney's fees of $19,000.

[4] Father now appeals the trial court's treatment of the 2013 Order as a provisional order as well as the child support and attorney's fees provisions in the August 2014 order.

---

[1] It is unclear when this conference in chambers occurred, as neither the transcript of the hearing nor the appendix reflect any such conference before, during, or after the July 3 hearing.

[2] Pursuant to the 2-2-3 schedule, Mother is to have custodial time every Monday and Tuesday overnight, Father is to have custodial time every Wednesday and Thursday overnight, and the parties are to alternate weekends including Sunday overnight. *Id.* at 27. Although this changed the order of the parties' weekday overnights, the total time the children spent with each parent did not change.

# Discussion and Decision

## I. Standard of Review

The trial court made findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). "In reviewing findings made pursuant to Rule 52, we first determine whether the evidence supports the findings and then whether [the] findings support the judgment." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). We "shall not set aside the findings or judgment unless clearly erroneous . . . ." T.R. 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings, when the findings fail to support the judgment, or when the trial court "applies the wrong legal standard to properly found facts." *K.I.*, 903 N.E.2d at 457.

Although we give considerable deference to trial courts in family law matters, "to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result." *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 941 (Ind. 2005).

## II. Provisional v. Final Order

Indiana Code section 31-14-10-1 provides that in a paternity action, "[u]pon finding that a man is the child's biological father, the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and parenting time." However, the court may dispense with the hearing required by that section if "the mother and the alleged father execute and file with the court a verified written stipulation; or . . . the parties have filed a joint

petition resolving the issues of custody, child support, and parenting time."
Ind. Code § 31-14-10-3. This is similar to the provisions of Indiana Code
section 31-15-2-17(a) which allows parties to a dissolution to agree in writing to
provisions for the custody and support of their children. In either case, the trial
court must approve the agreement, and in doing so, it is the duty of the trial
court to determine if the agreement is in the best interests of the children. *In re
Paternity of T.G.T.*, 803 N.E.2d 1225, 1228 (Ind. Ct. App. 2004), *trans. denied*;
*Beaman v. Beaman*, 844 N.E.2d 525, 532 (Ind. Ct. App. 2006).

[8] The trial court found that the agreement it approved in the 2013 Order was
provisional and that the August 2014 order was a final order regarding custody,
support, and parenting time. Provisional orders are temporary in nature and
designed to maintain the status quo while issues are more fully developed. *See
Mosley v. Mosley*, 906 N.E.2d 928, 929-30 (Ind. Ct. App. 2009). Notably, there
is no authority in the paternity statutes for a provisional order, such as there is
in the dissolution statutes. *See* Ind. Code § 31-15-4-8. Nonetheless, as the
underlying principle behind both the paternity and the dissolution statutes is the
best interests of the child, *In re Paternity of K.J.L.*, 725 N.E.2d 155, 157 (Ind. Ct.
App. 2000), as there is no *prohibition* on provisional orders in the paternity
statutes, and in recognition of the realities of litigation, we see no particular

reason why a trial court could not make an appropriate provisional order in a paternity case.[3]

[9] That does not, however, mean that the 2013 Order was a provisional order. On the date originally set for a hearing on Father's petition to establish paternity, the parties presented to the trial court an agreement regarding custody, child support, and parenting time. Father and Mother each testified to the court and affirmed their understanding of the relevant provisions. There is no indication in their testimony or in the written agreement itself that it was intended to be a provisional agreement subject to further consideration. The agreement acknowledges the daytime parenting time is subject to change when the children are in school/school age, which L.R.A. was not at the time; discusses summer and holiday parenting time; and apportions tax deductions for 2013 "and subsequent years." Appellant's App. at 59-60. Although the parties did specifically reserve two issues for the trial court's future determination, neither of those issues substantively impacted custody, support, or parenting time as between Father and Mother.

[10] There is also no indication in the trial court's approval of the agreement that its approval was provisional only or that it contemplated any future action with regard to the issues of custody, support, or parenting time. No future hearing

---

[3] *In re Paternity of C.J.A.*, 3 N.E.3d 1020, 1030 (Ind. Ct. App. 2014) squarely addressed this very issue and determined that issuing a provisional order in a paternity action was appropriate and consistent with a trial court's statutory authority. This decision was vacated, however, when the Indiana Supreme Court granted transfer and dismissed the appeal. *In re Paternity of C.J.A.*, 12 N.E.3d 876 (Ind. 2014).

was set, and the chronological case summary describes the case as "disposed" as of January 16, 2013. Appellant's App. at 5. If no disputes had arisen between the parties about these issues, there is no indication that the trial court would have taken these issues up again. Moreover, when disputes thereafter did arise, the parties filed petitions for *modification* of the 2013 Order, rather than requesting a final hearing. Further, Father's counsel noted at the outset of the July 3, 2014 hearing that they believed it was a modification hearing, and he questioned Father as to changes in circumstances since the 2013 Order. The trial court may now think that approving the agreement was improvident,[4] but that does not change the essential nature of the 2013 Order: it was an order approving a full and final agreement between the parties as to custody, support, and parenting time.

## III. Child Support

[11]     When the trial court determined that the 2013 Order was a provisional order, it then decided the issues of custody, support, and parenting time as if for the first time, rather than as if they were being modified. Father challenges only the trial court's order as to child support. An initial support order in a paternity

---

[4] The trial court's primary concern in retrospect seemed to be the provision of the agreement that no child support be paid by or to either party. However, the parties' agreement to deviate from any amount the Child Support Guidelines would have imposed was explained as due to the parties' shared physical custody of the children and the expenses Father agreed to pay. Moreover, we note that Mother resided with her parents and had no living expenses of her own. Under the circumstances, we cannot agree with the trial court that the parties' agreement was "void as a matter of law" because it "bargain[ed] away a child's right to be properly supported by both parents," Appellant's App. at 28, as there was a clearly stated basis supporting the agreement.

action may include the period dating from the birth of the child, Ind. Code § 31-14-11-5(a), and may order "either or both parents to pay any reasonable amount for child support," Ind. Code § 31-14-11-2. A modification of support may only be made "upon a showing of changed circumstances so substantial and continuing as to make the terms [of the child support order] unreasonable" or where a party has been ordered to pay an amount that differs by more than twenty percent from the child support guideline amount if the existing order was issued at least twelve months prior to the petition for modification. Ind. Code § 31-16-8-1; *see also* Ind. Code § 31-14-11-2.3 ("A child support order issued under [the paternity support] chapter is subject to the provisions in IC 31-16-6 through IC 31-16-13."). In addition, the trial court has the discretion to make a modification relate back only to the date a petition to modify was filed or any date thereafter. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 763 (Ind. Ct. App. 2013). The issue of child support had been initially determined by the 2013 Order, and any change thereafter needed to be considered under the modification standard. The trial court therefore committed an error of law in in its August 2014 order by applying the initial determination standard and ordering Father to pay child support dating back to the physical separation of the parties. The trial court should have applied the modification standard to the issue of child support and could relate such modification back only to the date Mother filed her petition to modify.

[12] As the trial court's child support order is based on the erroneous finding that it was considering all issues anew, we reverse the trial court's August 2014 order

as to child support issues and remand for further proceedings under the appropriate standard. We note that the trial court is not required to hold a new hearing unless either party requests it or the trial court determines in its discretion that one is necessary.

## IV. Child Care Expenses

[13] The trial court also found that Mother had incurred work-related child care expenses from the time she and Father separated in January 2012 until March 2014 and ordered Father to reimburse Mother for amounts she spent in excess of her proportional share. Paragraph 1 of Child Support Guideline 3E provides in part:

> Child care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the parent works or actively seeks employment. Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children.

The commentary to Guideline 3E provides that work-related child care expenses are "an income-producing expense of the parent."

[14] The evidence does not support a finding that the child care expenses Mother incurred were reasonable or work-related. Mother submitted as an exhibit a summary of daycare/preschool costs accompanied by some receipts which show that from January 2012 to July 2012, the parties split the $4,500 cost of daycare. From February 2012 to May 2013, Mother paid $1,739 to the YMCA for M.R.A. and from February 2013 to April 2013, she paid $1,376 to ABC123

daycare for L.R.A. From August 2013 to March 2014, Father paid $5,805 in preschool costs. Mother testified that during the period the children were at ABC123 and the YMCA, she was taking classes and either not working at all or working approximately four hours per week. Also during that period, Father had indicated he was available to have the children with him.

[15] This evidence does not support a finding that the child care expenses Mother paid to ABC123 or the YMCA were reasonable—as Father's availability to care for the children obviated the need for child care expenses to be incurred at all— and further does not support a finding that the expenses were work-related or income-producing—as Mother was either not working during that time or was working minimally and she failed to connect the child care expenses to her hours of employment. We therefore conclude the trial court's judgment in this regard is clearly erroneous.

# IV. Attorney's Fees

[16] Indiana Code section 31-14-18-2 provides:

> (a) The court may order a party to pay:
>> (1) a reasonable amount for the cost to the other party of maintaining an action under this article; and
>> (2) a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment.

In making such an award, "the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the

reasonableness of the award." *A.G.R. ex rel. Conflenti v. Huff*, 815 N.E.2d 120, 127 (Ind. Ct. App. 2004), *trans. denied*. The trial court may also consider any misconduct by one party that causes the other party to directly incur additional fees. *Id.* "When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper." *Id.* at 127-28. We review a trial court's award of attorney's fees for an abuse of discretion. *Id.* at 127.

[17] At Mother's request, the trial court ordered Father to pay her attorney's fees in the amount of $19,000. In support of this order, the trial court made the following findings:

> 140. At the time of the hearing, Father was employed with FedEx, earning approximately sixty thousand dollars ($60,000.00) per year.
>
> 141. That, at the time of the hearing, Mother had been minimally employed while attending Ivy Tech College. Mother's actual income averages around eight thousand ($8,000.00) a year.
>
> 142. Father is in a better position to pay the fees which have been incurred and should be responsible for paying Mother's fees for the following reasons:
>
>> a. He earns more income or has the potential to earn more income than Mother;
>>
>> b. He has reduced living expenses since he resides with his Wife;
>>
>> c. Father's behavior throughout this more than two year protracted litigation has caused Mother to incur substantially more fees including Mother defending two CPS calls and defending Father's pending contempt charges until the day of hearing and defending Father's request for sole custody; and
>>
>> d. His petition to modify custody has been denied.

Appellant's App. at 56. Although we question the trial court's finding regarding Father's "reduced living expenses" given the evidence that Mother resides with her parents and has no living expenses, Father undeniably makes substantially more than Mother (both her actual income and her imputed income[5]). In addition, our resolution of this appeal moots at least part of the child support arrearage the trial court reduced to judgment against Father. For both of these reasons, Father is in a superior position to pay fees, and we cannot say the trial court abused its discretion in ordering him to do so.

# Conclusion

[18] The trial court's order for child support is reversed, and this cause remanded to the trial court for further consideration of Mother's petition for modification of child support consistent with this opinion. The trial court's entry of judgment against Father for reimbursement of child care expenses is also reversed, but the trial court's entry of judgment against Father for Mother's attorney's fees is affirmed.

[19] Reversed in part, affirmed in part, and remanded.

May, J., and Mathias, J., concur.

---

[5] In calculating child support, the trial court imputed income to Mother at the minimum wage, $290.00 per week, or approximately $15,000 per year.