

FILED

Sep 20 2019, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kathleen M. Meek
Romy N. Elswerky
Justin T. Bowen
Bowen & Associates, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Matthew R. Springer
Rochelle E. Borinstein
Borinstein Springer, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| **T.R.,**<br>*Appellant-Respondent,*<br><br>v.<br><br>**E.R.,**<br>*Appellee-Petitioner* | September 20, 2019<br><br>Court of Appeals Case No. 19A-DC-89<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt Eisgruber, Judge<br>The Honorable Christopher B. Haile, Magistrate<br><br>Trial Court Cause No. 49D06-1701-DC-2086 |

**Baker, Judge.**

T.R. (Father) appeals the trial court's decree of dissolution on E.R.'s (Mother) petition to dissolve their marriage. He argues that (1) the trial court erred by ordering that his parenting time occur at an agency at his expense; (2) the trial court erred by ordering him to complete a domestic violence course and a psychological evaluation; and (3) the trial court erred in its child support calculation. Finding no error but that the trial court needs to clarify portions of the order, we affirm and remand with instructions.

# Facts

Mother and Father were married in April 2015. Two children were born of the marriage—C.R., born in June 2015; and B.R., born in June 2016.

The Department of Child Services (DCS) filed a petition alleging the children to be children in need of services (CHINS) in July 2016. Although the CHINS petition is not in the record, the trial court's order explained that it was "a result of the behavior of [Father] at the hospital after the birth of [B.R.]." Appealed Order p. 2. At the dissolution hearing, Mother testified about the incident:

> [Father's] actions can be very erratic and confusing. For instance, after I gave birth to [B.R.], we were asked to get the car seat to take her home and he was in such a rage over that, that's why this DCS case happened. The hospital staff had to call DCS, . . . the police came—and I somewhat saw it coming, I had told my doctor during birth plan[ning] that he needed to be taken care of in whatever capacity so that I could just concentrate on [B.R.], the newborn. And they had no way of knowing that he would act that way because people in general don't, so the sorts of things—I can't say I saw that exact situation coming but, he

would—he was erratic enough and easy enough to upset that I wanted to make sure . . . .

Tr. Vol. II p. 11.

[4] While the CHINS case was still open, Mother filed a petition to dissolve the marriage on January 16, 2017. On February 24, 2017, the dissolution court held a preliminary hearing on the petition and refused to enter any order on custody or parenting time until the CHINS case was closed or the dissolution court was authorized by the juvenile court to proceed. On April 24, 2017, the dissolution court ordered assignment of the dissolution case to the Marion County Family Court Project so that it could be bundled with the CHINS case.[1]

[5] On July 26, 2017, the juvenile court entered an order on custody and parenting time under the dissolution cause number. In relevant part, it found and held as follows:

>    2.    That the Court finds that Mother has complied with the DCS case plan and Father has failed to comply with the DCS case plan.
>
>    3.    That it is now in the best interests of the minor children . . . that they shall now be in the physical custody

---

[1] The bundling of dissolution and CHINS cases is intended to "avoid fragmented and duplicative family services, increase consistent, effective and streamlined family services, avoid redundant and conflicting orders, and/or reduce the number of hearings that families are required to attend, thereby providing coordination and continuity of services, more informed decision-making and encourage family stability." Appellee's App. Vol. II p. 3.

of their Mother, and that the Mother shall have sole legal custody.

4. That [Father] shall exercise supervised parenting time . . . at the Seeds of Life agency at the Father's expense.

5. That, furthermore, Father is to complete a 26-week domestic violence course as the perpetrator through Families First.

Appellee's App. Vol. II p. 8. The juvenile court closed the CHINS case and released wardship of the children.

[6] On May 3, 2018, the dissolution court approved a partially mediated agreement regarding marital debts and assets and reserved all issues regarding the children for a final hearing. On December 6, 2018, the dissolution court held a final evidentiary hearing on the petition to dissolve the marriage. On December 14, 2018, the trial court issued the decree of dissolution of marriage. In pertinent part, it found and held as follows:

17. [Father] did not complete a 26-week domestic violence course.

18. [Father] testified that the closing of the CHINS cases rendered that order void in his opinion and therefore he did not have to comply with it.

19. [Mother] obtained an Ex Parte Order for Protection against [Father] on June 20, 2017.

20. [Father] did not request a hearing to contest the order and it remains in effect until June 20, 2019.

21. [Father] has not had any parenting time with the children since June 2017.

22. [Father] did not request a hearing on parenting time since that date.

23. Arrangements were made by counsel for supervised parenting time at the Mending Fences agency.

24. The supervised parenting time was cancelled by the agency staff after [Father] got into a dispute and altercation with the staff about the size of the room where the parenting time would take place.

25. The Court finds the demeanor and much of the testimony of [Father] to be bizarre and concerning.

26. [Father] is currently working eight hours per week at the USPS earning 17.78 an hour.

27. [Father] has previously held four other positions since 2017.

28. The positions lasted anywhere from six weeks to six months and ended either through discharge by the employer (two) or voluntary termination (two).

29. [Father] earned $36,000.00 at Platinum Pest Control which he voluntarily quit after three months in June 2018.

30. [Father] had previously been employed at Home Advisor for 5-6 months earning $40,000.00 per year plus commission.

31. [Father] had been employed by Cintas prior to that earning $40,000.00 per year plus commission.

32. [Father] has paid no child support during the pendency of this action.

33. The Court finds that based upon the lack of contact with the children for 1.5 years; failure to comply with the July 2017 Court order; demeanor at trial; and unstable work history and behavior that professional supervised parenting time is necessary at this time to protect the health of the children.

34. The Court finds it is in the best interests of the children that [Mother] has sole legal and physical custody of them.

35. [Father] shall have supervised parenting time two hours per week at the Kids Voice agency.

36. [Father] shall pay all costs of supervision.

37. [Father] shall complete the 26-week domestic violence perpetrator course at Families First and also complete a psychological evaluation.

38. The Court finds that [Mother] earns $420.00 per week and [Father] should have imputed income of $692.00 per week based upon his last full time employment . . . which he voluntarily terminated.

39. The Court notes that the imputed amount is less than [Father] earned at Home Advisor and Cintas during these proceedings.

***

41. The Court finds that both children are in pre-school at a cost of $125.00 per week.

42. The Court orders [Father] to pay $232.00 per week [in] child support through the state support agency. . . .

Appealed Order p. 3-5. Father now appeals.

# Discussion and Decision

[7] Father raises the following arguments in his appeal: (1) the trial court erred by ordering that his parenting time occur at an agency at his expense; (2) the trial court erred by ordering him to complete a domestic violence course and a psychological evaluation; and (3) the trial court erred in its child support calculation.

[8] Here, the trial court entered findings of fact. We may not set aside the findings or judgment unless they are clearly erroneous. *C.B. v. B.W.*, 985 N.E.2d 340, 343-44 (Ind. Ct. App. 2013). We consider whether the evidence supports the findings and whether the findings support the judgment. *Id.* at 344. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give due regard to the trial court's ability to

assess witness credibility and defer substantially to its findings of fact. *Id.* In conducting our review, we will not reweigh the evidence; instead, we will consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* Where, as here, the trial court enters special findings sua sponte, the general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial. *Id.*

# I. Agency Supervised Parenting Time

Father first argues that the trial court erred by ordering that his parenting time occur at an agency at his expense. He does not dispute that his parenting time should be supervised; instead, he argues that because agency supervision is expensive, his mother or brother should be allowed to supervise in his home.

The right of non-custodial parents to visit with their children is a sacred and precious privilege. *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013). Nevertheless, in all visitation disputes, the trial court must give foremost consideration to the best interests of the child. *Id.* at 760.

In *Hatmaker*, this Court considered the father's argument regarding the cost of agency-supervised parenting time:

> Because it will likely arise on remand, we address Father's claim that supervision fees are unaffordable in his economic circumstances, and should be a factor militating toward an order for unsupervised parenting time. The right of parenting time is subordinated to the best interests of the child. Accordingly, if unsupervised parenting time would pose a danger to a child, the

parent is not entitled to dispense with supervision because of the costs associated with supervisory programs.

*Id.* at 762 (internal citation omitted). In other words, because the paramount consideration is the child's best interests, those interests trump any argument about the cost of agency-supervised parenting time.

[12] In this case, both the CHINS court and the dissolution court found that it was in the children's best interests that Father's parenting time be supervised at an agency. Given the trial court's findings about Father's behavior, lack of compliance with the CHINS court's order, and lack of parenting time for the eighteen months leading up to the evidentiary hearing—all of which are supported by the evidence—we decline to second-guess the trial court's determination that his parenting time should take place at an agency.

[13] With respect to Father's arguments about his finances, the trial court found that he had held four different full-time jobs before deciding to work part-time for the United States Postal Service. Two of those jobs paid over $40,000 per year plus commission. And even when he was bringing in a regular salary, he still failed to maintain regular agency-supervised parenting time. We infer, based on this evidence, that the trial court concluded that finances are not the primary barrier between Father and his parenting time.

[14] And as for Father's suggestion that his mother and/or brother be permitted to supervise his parenting time in his home, we note again that the trial court found that it is in the children's best interests that his parenting time occur at an

agency, and we decline to second-guess that assessment. Moreover, Father's mother and brother live in Noble, Illinois, which is close to a three-hour drive from Father's residence. While they were willing to make the drive each week, their ability to supervise would be limited to Sunday afternoons, meaning that Father will get more parenting time if he works with an agency. Under these circumstances, we find that the trial court did not err by ordering that Father's parenting time be supervised at an agency at his expense.

## II. Orders Requiring Father's Action

## A. Domestic Violence Course

[15] Next, Father argues that the trial court erred by ordering him to participate in a twenty-six-week domestic violence course. He argues primarily that the trial court did not have the authority to make this order.[2]

[16] Whether or not the trial court had the authority to issue this order is beside the point. The *juvenile* court, as part of the CHINS case, ordered Father to participate in and complete this program. Indiana Code section 31-34-20-3 provides that a juvenile court may order a parent to, among other things, "[o]btain assistance in fulfilling the obligations as a parent" and "[p]articipate in

---

[2] Father also argues that the evidence does not support this order. We disagree, as there is a wealth of evidence in the record, including Mother's testimony and the juvenile court's order, supporting the trial court's conclusion that Father should participate in a domestic violence program.

a mental health . . . program." A domestic violence program would readily fall into both of these categories.

[17] Indiana Code section 31-30-1-13 provides that if, in the context of a CHINS proceeding, the juvenile court establishes or modifies custody and/or parenting time of the child and then closes the CHINS case, that order survives the closure of the CHINS case until a court having concurrent original jurisdiction (in this case, the dissolution court) "assumes or reassumes primary jurisdiction of the case to address all other issues." I.C. § 31-30-1-13(c).[3] In other words, when the juvenile court issued its order and closed the CHINS case, that order survived. And the juvenile court had the authority to order Father to participate in a domestic violence program.[4] Therefore, his argument is unavailing.

[18] We acknowledge that the wording of the statute is somewhat unclear. It could be argued that if the juvenile court's order survives "until" the other court assumes or reassumes primary jurisdiction, the juvenile court's order does not survive after that point in time. But given that the statute states that the other court will be assuming primary jurisdiction "to address all *other* issues," *id.*

---

[3] The court that assumes or reassumes primary jurisdiction may then modify the juvenile court's order, I.C. § 31-30-1-13(d), but here, it elected not to do so in relevant part.

[4] Father argues that it is only the portion of the order regarding custody and/or parenting time that survives. It is apparent that the juvenile court intended his participation in the domestic violence course to be a condition of his right to exercise parenting time with his children; therefore, that portion of the order survives as well.

(emphasis added), we infer that the juvenile court's order regarding custody and/or parenting time will survive. [5]

[19] We note that the trial court did not give any guidance to the parties regarding how, and to whom, Father is to prove that he has completed the program. In other words, is he to provide a certificate of completion to the trial court, the parenting time supervisor, and/or Mother? We remand with instructions to the trial court to clarify its order in this regard.

## B. Psychological Evaluation

[20] Next, Father argues that the trial court erred by ordering him to undergo a psychological evaluation. He is correct that there is no specific statutory authority for a trial court to mandate a psychological evaluation as part of a dissolution decree. *Pitcavage v. Pitcavage*, 11 N.E.3d 547, 561 (Ind. Ct. App. 2014) (noting no statutory authority for trial court to mandate psychotherapy for a parent as part of a dissolution decree).[6]

---

[5] That said, we note that, as with the psychological evaluation below, the trial court would be well within its discretion to order that Father participate in and complete a domestic violence program *as a condition of* his right to have parenting time with his children. Should the trial court wish to clarify this part of its order on remand, it is free to do so.

[6] Father also argues that there is insufficient evidence to support this order. We disagree, given Mother's testimony about Father's behavior over the years, the incident that led to the CHINS case being opened, and the trial court's observation of Father's bizarre and concerning demeanor and testimony at the evidentiary hearing. The trial court did not order him to undergo a course of therapy; it merely ordered that he be evaluated by a professional. We find that the evidence in the record readily supports this order.

[21]   That is not the end of the inquiry, however, as Indiana Code section 31-17-4-1(a) provides that a non-custodial parent is entitled to exercise reasonable parenting time with his or her child "unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." To ensure the child's well-being, therefore, this Court "has previously held that trial courts have discretion to set reasonable restrictions and conditions upon a parent's parenting time . . . ." *Pitcavage*, 11 N.E.3d at 561 (finding that trial court acted within its authority to order parent to participate in psychotherapy as a condition of her right to exercise parenting time).

[22]   Here, the trial court did not explicitly condition Father's parenting time on his completion of a psychological evaluation. While we infer that to be the trial court's intent, we remand so that it can clarify its findings and the nature of its order in this regard.

[23]   We also note that, as with the domestic violence program, the trial court did not indicate how and to whom Father is to provide proof of his completion of a psychological evaluation—the trial court? The visitation supervisor? We also observe that the trial court did not require Father to comply with any recommendations that may stem from the evaluation, and ask that on remand, it consider whether that should also be a condition of his right to exercise parenting time and clarify the order in this regard if need be.

# III. Child Support

Finally, Father argues that the trial court erred in its calculation of the amount of child support he owes. Specifically, he argues that the trial court erred by (1) finding that Father is voluntarily underemployed and imputing income to him as a result; (2) incorporating the cost of preschool into the calculation; and (3) calculating Mother's income.

## A. Voluntary Underemployment and Imputation of Income

Indiana Child Support Guideline 3(A)(3) states as follows:

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. . . .

Potential income may be determined if a parent is capable of earning more income. Ind. Child Support Guideline 3(A)(3) cmt. 2c. ("Obviously, a great deal of discretion will have to be used in this determination."); *see also In re Paternity of Pickett*, 44 N.E.3d 756, 766 (Ind. Ct. App. 2015) (observing that a trial court has wide discretion with regard to imputing income to ensure the child support obligor does not evade his or her support obligation).

[26]     This Court has squarely held that "[w]hile the Guidelines clearly indicate that a parent's avoidance of child support is grounds for imputing potential income, it is not a necessary prerequisite." *Pickett*, 44 N.E.3d at 766. Relevant here is the commentary stating that "[w]hen a parent is unemployed by reason of involuntary layoff or job termination, it still may be appropriate to include an amount in gross income representing that parent's potential income." Child Supp. G. 3(A)(3) cmt. 2c(4); *see also Bojrab v. Bojrab*, 810 N.E.2d 1008, 1015 (Ind. 2004) ("While legitimate reasons may exist for a parent to leave one position and take a lower paying position other than to avoid child support obligations, this is a matter entrusted to the trial court and will be reversed only for an abuse of discretion.").

[27]     Here, Father's relevant work history is as follows:

- From September 2015 through June 2017, Father worked at Cintas and earned approximately $43,000 per year plus approximately $10,000 per year in commissions. Father was fired from this job; he stated that the employment was not "a good fit" and that the job was "very political." Tr. Vol. II p. 31.
- In October and November 2017, Father worked at Shred It, earning $17 per hour plus commission. He quit that job.
- In November 2017, Father began working at Home Advisor. He earned approximately $40,000 per year plus $1,000-$3,000 in commission per month. He was fired from this job after approximately five to six months for bringing a firearm into the building.
- In April 2018, Father began working at Platinum Pest Control, earning approximately $36,000 per year. He quit that job after approximately three months because the "work environment was very unfavorable." *Id.* at 29.

- Although Father has an Associates Degree in Applied Science, in November 2018, he began working for the Postal Service for up to eight hours per week at $17.78 per hour.

We find that this evidence supports the trial court's conclusion that Father was voluntarily underemployed.

[28] Having found that Father was voluntarily underemployed, the trial court elected to impute to him income of $692 per week, or approximately $36,000 per year, which is the amount he was making at Platinum Pest Control before he quit. Given the evidence in the record that Father is capable of earning significantly more than $36,000, we find it eminently reasonable that the trial court chose to impute this amount. We find no error on this basis.

## B. Cost of Preschool

[29] Next, Father argues that the trial court erred by including the cost of preschool in the child support calculation. Indiana Child Support Guideline 3(E) provides as follows:

> [c]hild care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the parent works or actively seeks employment. Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children.

For child care expenses to be included in child support, the expenses must be work-related or income producing. *M.A. v. B.C.*, 41 N.E.3d 287, 295 (Ind. Ct. App. 2015).

[30] Father directs our attention to *M.A.*, in which this Court found that it was erroneous to include child care expenses in a child support calculation:

> [t]his evidence does not support a finding that the child care expenses Mother paid . . . were reasonable—as Father's availability to care for the children obviated the need for child care expenses to be incurred at all—and further does not support a finding that the expenses were work-related or income-producing—as Mother was either not working during that time or was working minimally and she failed to connect the child care expenses to her hours of employment.

*Id.*

[31] We find *M.A.* distinguishable from this case. First, Father was not available to care for the children because it is court ordered that his parenting time be supervised at an agency. Second, Mother testified that she works on Mondays from 9:00 a.m. to 6:00 p.m.; Tuesdays, Wednesdays, and Thursdays from 9:00 a.m. to 5:00 p.m.; and Fridays from 9:00 a.m. to 2:00 p.m. Tr. Vol. II p. 4. The children attend preschool for a half day on Mondays; C.R. attends preschool for a full day on Fridays; and B.R. attends preschool for a half day on Fridays. *Id.* at 9. Therefore, Mother was working during the hours the children attended preschool. Under these circumstances, we find no error regarding these child care expenses.

# C. Calculation of Mother's Income

[32] Finally, Father argues that the trial court erred by calculating Mother's income. The only evidence in the record regarding Mother's income is her testimony that she earns $14 per hour. *Id.* at 4. Based on her above description of her weekly hours, she works approximately thirty-eight hours per week[7] (nine hours on Mondays; eight hours each on Tuesdays, Wednesdays, and Thursdays; and five hours on Fridays). Therefore, Mother earns a weekly amount of $532.

[33] The trial court, however, calculated Mother's weekly income to be $420, with no explanation for the deviation from the evidence in the record. Therefore, we remand with instructions to either (1) explain the deviation or (2) re-calculate child support with Mother's weekly income at $532.

[34] The judgment of the trial court is affirmed and remanded with instructions to (1) clarify the order regarding the domestic violence program and psychological evaluation; and (2) clarify the order regarding Mother's income and re-calculate child support if necessary.

Kirsch, J., and Crone, J., concur.

---

[7] Although Mother testified that she works about thirty-six hours per week, tr. vol. II p. 4, when the hours she described are added together, the total is thirty-eight.