# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 25 2019, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEY FOR APPELLEE

Daniel A. Moon
Princeton, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of A.D.:

A.C.D.,

*Appellant-Respondent,*

v.

P.D.,

*Appellee-Petitioner.*

November 25, 2019

Court of Appeals Case No. 19A-JP-1421

Appeal from the Gibson Circuit Court

The Honorable Jeffrey F. Meade, Judge

Trial Court Cause No. 26C01-0601-JP-5

**Bailey, Judge.**

# Case Summary

[1] A.C.D. ("Mother") appeals an order modifying custody of A.D. ("Child") to P.D. ("Father") and granting Father attorney's fees. We reverse.

# Issues

[2] Mother presents two issues for review:

  I.    Whether the custody modification order is clearly erroneous; and

  II.   Whether the award of attorney's fees is an abuse of discretion.

# Facts and Procedural History

[3] Mother and Father dated briefly and Mother conceived Child, who was born in January of 2004. During the first year of Child's life, Father saw him once or twice per month. When Child was approximately one year old, Father moved to Florida. Mother and Child temporarily moved in with Father's parents in Kentucky. Although Father was estranged from his parents, they facilitated Father's visits with Child when Father used his two-week annual vacations to return to Kentucky. Over the next few years, Father "rarely" saw Child. (Tr. Vol. II, pg. 22.)

[4] On March 15, 2006, Father admitted his paternity of Child. With the help of a parenting time coordinator, Mother and Father developed a long-distance

parenting time schedule and a telephone visit schedule. Because Mother typically referred to Father as "Mr. [Surname]," the parenting time coordinator advised Mother to refer to Father as "Father" when speaking to Child. Mother and Father included the parenting time coordinator in their e-mail communications; arrangements sometimes involved somewhat lengthy negotiations.

[5] In the summer of 2009, Child spent seven weeks with Father in Florida. Thereafter, Father became delinquent in his child support payments and apparently his contact with Child lapsed.[1] When the arrearage exceeded $25,000.00, Father was arrested and charged with felony non-support. Father spent a month in jail, and then paid $5,000.00 of the arrearage, resulting in reduction of the charge to a misdemeanor. Father considered this to be a "wake-up call," *id.* at 74, and he took steps to interact more with Child, including Skype visits and exercising parenting time in Indiana with Child. In the summer of 2017, Father relocated to Indiana so that he could be near Child.

[6] Child and Father went to seven joint counseling sessions to open their communication, sessions the therapist deemed to be successful. Child began to spend alternate weekends with Father and several hours on Wednesday evening. Eventually, the Wednesday parenting time progressed to overnights.

---

[1] Father testified that he was "not there for the first four years of [Child's] life, but later was "trying since then," with the exception of "one and one-half years of not paying." (Tr. Vol. II, pg. 81.) Mother testified that the seven-week visit was the "last time until jail." *Id.* at 109.

But Father believed that Mother did not fully encourage the father-son relationship. On January 4, 2018, Father filed a motion seeking appointment of a guardian ad litem ("GAL").

On July 11, 2018, Father filed a contempt petition and a petition for modification of custody. Father alleged that he had been deprived of several hours of parenting time on Child's birthday and that he had been discouraged from attending a class that Child took on some Wednesday evenings.[2] The trial court ordered the parties to participate in mediation and they did so, reaching a temporary agreement as to some disputed issues. Both parents completed parenting classes. The provider suggested that Mother might benefit from an additional class. The GAL filed successive reports in the trial court, with the last filed on January 10, 2019.

On April 23, 2019, Father filed a request for findings of fact and conclusions of law and a request for the appointment of a parenting time coordinator. On April 24, the trial court conducted a hearing at which testimony was heard from

[2] Child's birthday was also a school snow day. Father requested to have Child during the day, but Mother did not surrender Child until 5 p.m.

Also, Child enrolled in a dog-training class at PetsMart. Because the class took place on Wednesday evening, Mother and Father discussed the situation in advance and Father agreed to the class. However, a dispute arose when Father wanted to observe the class, and Mother opined that he should wait until a later stage in the training when the dogs were more settled. It appears that both parents attended one or more classes, maintaining a suitable distance from the animals, and not speaking to one another.

Finally, Father alleged that he had not been given a right of first refusal in accordance with a court order of October 10, 2017 allowing Father a right of first refusal if Child were home alone more than three hours in a week. The trial court, in adopting Father's proposed findings, found that Father had been denied his right. However, there was no testimony as to an occasion where Child had been home alone for three hours or more.

Mother, Father, and the GAL. The trial court also heard brief testimony from a therapist and the director of an educational parenting time center, describing services offered to the parents and Child.

[9] The GAL testified regarding his perception that Mother believed Child, then aged fifteen and an honor roll student, should determine his own parenting time schedule. The GAL opined that Mother had "shared way too much" with Child in the past, *id.* at 122, and he had observed signs of parental alienation. He found Father consistently cooperative but "questioned why Father was out of [Child's] life so long." *Id.* at 125. The GAL expressed "no idea if Child would be harmed by more time with Father," and ultimately recommended that custody remain with Mother. *Id.*

[10] Father testified that he wanted custody of Child to stop parental alienation from worsening. He described parenting time as "on a solid schedule now," but expressed fear of a negative change. *Id.* at 82. Mother testified that Child was well-settled, had a 3.7 or 3.8 grade point average on a 4.0 scale, and was happy with the current living and parenting time arrangements. She requested that the status quo be maintained, although she agreed to address Father by his middle name, which he commonly used.

[11] The trial court denied Mother's request that Child be interviewed in chambers. However, multiple witnesses testified that Child wished to remain in Mother's custody and continue to exercise parenting time with Father on alternate weekends and Wednesdays.

[12]   On May 20, 2019, the trial court adopted verbatim Father's proposed findings of fact and conclusions thereon. The order included a multiple-page recitation of an e-mail from Mother to Father drafted when Child was five years old (indicating that Child had been allowed to call someone other than Father "dad" and that Mother had spoken of her subjective feelings of hurt to Child). Mother was deemed to be "less than enthusiastic" about fostering a "nurturing relationship" between Father and Child. Appealed Order at 3. The trial court found there to be an instance of deprivation of Father's parenting time, that is, Mother's failure to release Child to Father on Child's birthday before 5:00 p.m. Mother was ordered to pay Father $750.00 for this action.[3]

[13]   Father was awarded primary physical custody of Child and Mother was ordered to pay $7,000.00 of Father's attorney's fees "given the fact [that] mother's actions in this case are the reason father had to seek a modification of custody." Appealed Order at 8. Mother obtained a stay of the trial court's order and posted a $7,000.00 bond. This appeal ensued.

# Discussion and Decision

## Custody

[14]   Indiana Code Section 31-14-13-2 sets forth the factors for custody determination in a paternity action. The court must determine custody in

---

[3] Mother does not challenge the $750.00 award to Father.

accordance with the best interests of the child, and consider all relevant factors, including:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parents;
>>
>> (B) the child's siblings; and
>>
>> (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian[.]

*Id.*

[15]     When the trial court is asked to consider a change of custody, a more stringent standard is required than for an initial custody determination. *Steele-Giri v. Steele*, 51 N.E.3d 119, 128 (Ind. 2016). This is because permanence and stability are considered to be best for the welfare and happiness of a child. *Id.* The party seeking to modify custody bears the burden of demonstrating that the existing custody should be altered. *Id.*

[16]     In order for the trial court to modify custody, the court must find *both* that modification is in the best interests of the child and there is a substantial change in one or more of the factors enumerated in the custody modification statute. *Id.* at 127 (emphasis in original). A change in circumstances is to be judged in the context of the whole environment, and the effect upon the child is that which renders a change substantial or inconsequential. *Id.*

[17]     A trial court's decision on child custody is reviewed for an abuse of discretion. *Purnell*, 131 N.E.3d at 627 (Ind. Ct. App. 2019). There is a well-established preference for granting deference to our trial judges in family matters. *Id.* Accordingly, we do not substitute our judgment for that of the trial court. *Id.*

[18]     Where, as here, the trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Purnell v. Purnell*, 131 N.E.3d 622, 627 (Ind. Ct. App. 2019). We do not set aside the findings or judgment unless we find clear error. T.R. 52(A). "A judgment is clearly erroneous when there is no evidence supporting the

findings, when the findings fail to support the judgment, or when the trial court applies the wrong legal standard to properly found facts." *In re Paternity of M.R.A.*, 41 N.E.3d 287, 293 (Ind. Ct. App. 2015). Although deference is accorded to trial courts in family law matters, the trial court has no discretion to reach the wrong result and thus "to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible." *Id.* We do not reweigh the evidence or assess the credibility of witnesses but look to the evidence most favorable to the trial court's judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 20111).

[19] Here, the trial court did not enter an explicit finding as to Child's best interests.[4] As for statutory factors, the trial court found "a substantial change in the mental health of the mother, to the detriment of [Child], warranting a modification of custody." Appealed Order at 7. But there was no testimony addressed to Mother's mental health or a substantial change in her mental health. The evidence does not support the finding upon which the modification judgment rests.

[20] Father claims the trial court implicitly decided that a change of custody was in Child's best interests. As for the second prong, a substantial change in one of

---

[4] It appears that the trial court signed Father's proposed findings, striking only some predicate language and changing the amount of attorney's fees requested. It is not per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *Clark v. Crowe*, 778 N.E.3d 835, 841 n.3 (Ind. Ct. App. 2002). However, the practice of accepting verbatim a party's proposed finds of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003).

the statutory factors, Father asserts "the court found evidence of parental alienation." Appellant's Brief at 11. He argues that the findings and conclusions "point to" a substantial change in the interaction and interrelationship of Child with his parents and the mental and physical health of all individuals involved. *Id.* We look to the findings and conclusions favorable to the judgment, but we decline Father's invitation to scour the record and find evidentiary support for his contentions. We do not substitute our judgment for that of the trial court, but neither will we develop and author findings and conclusions to support a judgment. *Purnell*, 131 N.E.3d at 627.

[21] Consistent with Indiana Code Section 31-14-13-6, the trial court must find a custody modification is in the child's best interests and there has been a "substantial change" in one or more of the relevant factors. *Steele-Giri*, 51 N.E.3d at 127. Absent a "substantial change," stability and permanency are presumed to be in a child's best interests. *Id.* at 128. With reference to the trial court's findings, Child's life is a model of stability. By all accounts, Child is well adjusted, an excellent student, and physically healthy. He routinely spends time with both of his parents and with Father's stepchildren. He has lived with Mother his entire life, nearly sixteen years, and wishes to continue to do so. Looking to the findings and conclusions favorable to the judgment – that is, there have been isolated instances of maternal misconduct – they do not adequately support the judgment changing primary physical custody of Child to Father.

# Attorney's Fees

[22] The trial court awarded Father attorney's fees of $7,000.00 on grounds that "mother's actions in this case are the reason father had to seek a modification of custody." Appealed Order at 8.

[23] We review an award of attorney's fees for an abuse of discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if the court has misinterpreted the law. *In re Paternity of S.A.M.*, 85 N.E.3d 879, 890 (Ind. Ct. App. 2017). Pursuant to Indiana Code Section 31-14-18-2, the court in a paternity action may order a party to pay:

> (1) a reasonable amount for the cost to the other party of maintaining an action under this article; and

> (2) a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred, before the commencement of the proceedings or after entry of judgment.

[24] In making such an award, the trial court must consider the resources of the parties, their economic condition, their respective ability to engage in gainful employment, and such factors that bear on the reasonableness of the award. *In re Paternity of S.A.M.*, 85 N.E.3d at 890 (citing *In re Paternity of M.R.A.*, 41 N.E.3d at 296). Here, there are no findings regarding Mother's or Father's economic condition. The trial court stated that unspecified conduct on

Mother's part necessitated Father's filing of the custody modification petition. We conclude that the trial court misapplied the law.

# Conclusion

The judgment is clearly erroneous.

Reversed.

Najam, J., and May, J., concur.